Robert Dennis TURNBOUGH, Petitioner,

v.

UNITED PACIFIC INSURANCE
COMPANY, Respondent.

No. C–1844.

Supreme Court of Texas.

Jan. 11, 1984.

As Corrected on Denial of Rehearing
April 18, 1984.

Doherty & Williamson, Jimmy William-
son and Larry J. Doherty, Houston, for
petitioner.

Weittinger, Steelhammer and Tucker, Jack W. Tucker, Jr. and L. Keith Slade, Houston, for respondent.

McGEE, Justice.

This workers' compensation suit was instituted by United Pacific Insurance Company, respondent, to set aside an adverse Industrial Accident Board award. Robert Dennis Turnbough, petitioner, was awarded compensation for total and permanent incapacity and medical expenses. The trial court rendered judgment for Turnbough based on a jury verdict. The court of appeals reversed the trial court's judgment and rendered a take-nothing judgment. Unpublished opinion, Rule 452, Tex.R. Civ.P. We reverse the judgment of the court of appeals and remand the cause to that court.

Johnson-Loggins, Inc. and Gibraltar Savings Association operated as the Quail Run Joint Venture to develop the Quail Run subdivision. Ralph Koepf, who was an employee of Johnson-Loggins, supervised the housing development's construction. Koepf would purchase building materials, estimate the job, hire and fire workmen and make sure the job was completed. On January 1, 1978, Koepf resigned from Johnson-Loggins. Jim Tipps, Vice-President of Johnson-Loggins, asked Koepf to finish three Municipal Utility District houses that Koepf was working on prior to January 1, 1978. Koepf agreed to perform the work in a supervisory capacity. On the same day an agreement was drawn up between Johnson-Loggins and Koepf Construction Company to complete these three houses in Quail Run. Johnson-Loggins accepted the agreement for Koepf's supervision of the construction. Koepf testified that his job, duties and control over the work details in Quail Run remained the same as when he was an employee of Johnson-Loggins. Koepf retained the authority to control the work details on the three houses. Koepf was still paid by Johnson-Loggins although the pay schedule changed. Koepf remained a supervisor for Johnson-Loggins.

Koepf hired John Aitkins to do the framing on the three houses. Johnson-Loggins was to pay Aitkins $1.50 per square foot for the work Aitkins was to complete. Aitkins had to furnish his own crew. Turnbough had been hired by Aitkins prior to the Quail Run project. Aitkins' crew on the Quail Run project consisted of four workers including Turnbough.

On March 1, 1978, Turnbough was standing inside a Port-A-Can provided by Johnson-Loggins on the Quail Run job site. Aitkins fired a shotgun at the Port-A-Can intending to hit the top of it and scare Turnbough. Turnbough was hit in the head by the shotgun pellets and was severely injured. The parties stipulated that Turnbough was totally and permanently disabled. A claim for workers' compensation was filed with United Pacific Insurance Company, Johnson-Loggins' insurance carrier. United Pacific denied coverage to Turnbough on the basis that he was not a Johnson-Loggins employee. The Industrial Accident Board awarded Turnbough workers' compensation for total and permanent incapacity and medical expenses.

United Pacific filed suit in district court to set aside the Industrial Accident Board's award. United Pacific claimed Turnbough was the employee of a subcontractor, Aitkins, and not an employee of Johnson-Loggins, and therefore, Turnbough was not covered by Johnson-Loggins' workers' compensation policy.

In Turnbough's counterclaim against United Pacific, Turnbough alleged he was an employee in fact, by operation of law and by equitable estoppel of Johnson-Loggins and Gibraltar Savings. Turnbough sought workers' compensation benefits at the rate of $91.00 per week for 401 weeks and past, present and future medical expenses. Additionally, Turnbough pleaded that Johnson-Loggins failed to keep and maintain workers' compensation insurance benefits for Turnbough's use, and that his injuries were caused by the negligence of a Johnson-Loggins employee. Therefore, Turnbough also sought to recover general damages not limited to workers' compensa-

tion benefits against Johnson-Loggins and Gibraltar Savings.

The trial was to a jury. In answer to special issues No. 1 and No. 2, the jury found Turnbough to be an employee of Johnson-Loggins and that the injury occurred in the course and scope of Turnbough's employment. In answer to special issue No. 3, they found Johnson-Loggins sublet all or some of the work on the Quail Run project to Aitkins or some contractor with the purpose and intention of avoiding responsibility or liability for workers' compensation benefits to Turnbough. In answer to special issue No. 4, the jury found Johnson-Loggins withheld money directly or indirectly for the purchase of workers' compensation insurance for Turnbough. The trial court rendered judgment for Turnbough on a favorable jury verdict. Based upon the parties' stipulations, Turnbough was awarded $36,882.66 in workers' compensation benefits, $45,920.00 for custodial services incurred from the date of this cause of action until trial date and $13,752.82 for medical and dental expenses incurred and paid by Turnbough. Further, Hermann Hospital, intervenor, was awarded $110,485.38, the amount of Turnbough's unpaid medical bills as stipulated by the parties. Turnbough was also awarded future medical benefits as provided by the Texas Workers' Compensation Law.

On appeal, the court of appeals reversed the trial court's judgment and rendered a take-nothing judgment. That court sustained United Pacific's point of error that there was no evidence to support the jury's finding of Turnbough's status as an employee of Johnson-Loggins. The court of appeals also held there was no evidence that United Pacific knew of Johnson-Loggins' withholding eight percent of Aitkins' draws for workers' compensation insurance or that United Pacific ever received any of the money withheld. Hence, the court of appeals declined to apply the doctrine of equitable estoppel to this case. The court of appeals impliedly disposed of Turnbough's cause of action based on article

8306, § 12g[1] holding that Turnbough was not an employee of Johnson-Loggins; however, the court of appeals did not consider Turnbough's claim under article 8307, § 6.

In reviewing "no evidence" points, we must consider only that evidence and the reasonable inferences that can be drawn therefrom, in their most favorable light, to support the jury's findings while disregarding all others. *Dolenz v. Continental National Bank of Fort Worth*, 620 S.W.2d 572 (Tex.1981); *Biggs v. United States Fire Insurance Company*, 611 S.W.2d 624 (Tex.1981).

In this case, there is some evidence that Turnbough was an employee of Johnson-Loggins when he was injured. Both Koepf and Aitkins testified that Koepf had the right to control Aitkins' work details and could direct any construction performed by Aitkins or his crew. Koepf testified that he had the authority to delegate duties on the job. Koepf and Aitkins testified that Koepf had the authority to hire and fire Aitkins or any of Aitkins' crew. This authority came from Johnson-Loggins.

Persons Koepf ordered to work on the Quail Run project were paid by Johnson-Loggins. Koepf prepared weekly draws which reflected the method by which Aitkins and his crew received money from Johnson-Loggins. Aitkins testified that Koepf signed the checks for Johnson-Loggins. Koepf would deliver a check to Aitkins, and then Aitkins would pay Turnbough and the remainder of the crew in cash. Johnson-Loggins' employees were paid weekly whether or not they completed their job. However, Johnson-Loggins' subcontractors were paid on a job-by-job basis and were only paid when the job was completed. Koepf would come out to the job site to see how much work was accomplished by Aitkins during the week and determine how much to pay Aitkins. Koepf testified that in the past if a subcontractor did not pay his employee, then Johnson-Loggins would pay that employee. After Turnbough was injured, Quail Run

---

1. All statutory references are to Vernon's Annotated Texas Civil Statutes.

Joint Venture issued a check to Turnbough for labor done on Quail Run Water District houses. Jim Tipps, Vice-President for Johnson-Loggins, signed that check. Only Johnson-Loggins had authority to issue Quail Run Joint Venture checks.

Koepf and Aitkins both testified that Koepf deducted eight percent of the wages due to Aitkins and his crew to pay for workers' compensation insurance. This eight percent was withheld and retained by Johnson-Loggins. If a worker did not have his own compensation insurance or have an insurance certificate stating the amount for which he was insured and why, then Koepf would hold out eight percent to make sure the worker was covered by workers' compensation insurance. Aitkins testified that he did not have a workers' compensation certificate and the only way Aitkins could have worked on the Quail Run project was for Johnson-Loggins to provide him the workers' compensation insurance. Aitkins knew he would not get paid until the eight percent had been pulled from his check. There was evidence that some Johnson-Loggins subcontractors had workers' compensation insurance premiums withheld from their checks. These subcontractors had employees injured in the course and scope of employment, and Johnson-Loggins' insurance carrier paid the injured employee workers' compensation benefits. Johnson-Loggins' insurance policy covered carpenters who were Johnson-Loggins' employees. Turnbough performed the work of a carpenter's helper. After Turnbough was injured a regular claim form was filled out which listed Turnbough as the claimant. Turnbough was listed as a laborer and his foreman was shown to be John Aitkins. Johnson-Loggins was listed as the insured. United Pacific did not honor the claim.

■ From this evidence, the jury could have concluded that Turnbough was an employee of Johnson-Loggins at the time he was injured. United Pacific also urged in the court of appeals that the evidence was factually insufficient to support the jury's finding that Turnbough was an employee of Johnson-Loggins. The court of appeals did not pass on the factual sufficiency of this evidence. Because this factual insufficiency point is within the exclusive jurisdiction of the court of appeals, we must remand this issue to that court. *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Biggs v. United States Fire Insurance Company*, 611 S.W.2d 624 (Tex.1981); *Stanfield v. O'Boyle*, 462 S.W.2d 270 (Tex.1971).

■ Turnbough has also pleaded under article 8307, § 6 that by operation of law he was an employee of Johnson-Loggins and Gibraltar Savings. The jury found that Johnson-Loggins sublet all or some of the work on the Quail Run project to Aitkins or some contractor with the purpose and intention of avoiding responsibility or liability for workers' compensation benefits to Turnbough. We hold that there is some probative evidence in the record to support the jury's finding. Turnbough additionally pleaded a cause of action under article 8306, § 12g. The jury found that Johnson-Loggins withheld money directly or indirectly for the purchase of workers' compensation insurance for Turnbough. We hold that there is some probative evidence in the record to support the jury's finding. United Pacific urged at the court of appeals that the evidence was factually insufficient to support these jury findings. Because the court of appeals did not pass on the factual sufficiency of the evidence, we must remand these issues to that court for further consideration.

The judgment of the court of appeals is reversed and the cause is remanded to that court to pass upon the points that assert the factual insufficiency of the evidence.