**WAL–MART STORES, INC., Appellant,**

v.

**Flora L. GONZALEZ, Appellee.**

**No. 04–96–00419–CV.**

Court of Appeals of Texas,
San Antonio.

July 23, 1997.

Rehearing Overruled Sept. 15, 1997.

J. Preston Wrotenbery, Kevin D. Jewell, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, for Appellant.

Calixtro Villarreal, Rio Grande City, Charles A. Nicholson, Law Offices of Pat Maloney, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LOPEZ and ANGELINI, JJ.

HARDBERGER, Chief Justice.

This is a rare case. The Plaintiff won a jury verdict in a slip-and-fall case, an ever-increasing improbability. Damages of $100,000 were awarded. Wal–Mart appeals.

## FACTS

Flora Gonzalez was shopping at a Wal–Mart store in Rio Grande City. While she was going to get her cart, she stepped on macaroni that had been mashed by previous carts running through it. She fell down injuring her shoulder, side, back, and knee. The macaroni, which had once been part of a cooked macaroni salad sold by the store, had visible cart tracks through it. The cart tracks could not have been made by Mrs. Gonzalez as she had no cart. The spillage was dirty and "seemed like it had been there awhile." The store manager came, reports were taken, and Mrs. Gonzalez was taken from the store by ambulance to the hospital. She saw the doctor on numerous occasions following the accident, and was walking with a cane, prescribed by her physician, at the time of trial.

## POINTS OF ERROR

### a. Insufficient Evidence of Notice (Points of Error One and Two)

Wal–Mart contends in its first and second points of error that the evidence is legally and factually insufficient to support a finding that Wal–Mart had actual or constructive knowledge of a dangerous condition on its premises. Wal–Mart also says there is a lack of evidence to show that it failed to use reasonable care to reduce or eliminate the condition.

In considering a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the jury's findings. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 459 (Tex.1992). Evidence and inferences to the contrary are disregarded. *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593 (Tex.1986).

This court has exclusive jurisdiction in determining the question of factual sufficiency. *Turnbough v. United Pac. Ins. Co.,* 666 S.W.2d 489, 492 (Tex.1984). Wal–Mart, as the appellant, has the burden of demonstrating that there is a lack of factually sufficient evidence to support the jury's finding. The standard of review requires the court of appeals to set aside the finding upon a showing that the evidence is so weak so as to render the finding clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ Gonzalez was Wal–Mart's invitee. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992), defines the elements that must be proven in this type of case:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch,* 845 S.W.2d at 264. These elements were established even earlier in *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983). Wal–Mart attacks the elements of "actual or constructive knowledge" and "reasonable care."

> Before detailing the evidence, it is important to remember that this court is not jury number two. Whether this court, if it were the original factfinder, would have found for one side or the other is immaterial. A jury in this state has great power. Jurors are "the sole judges of the credibility of the witnesses and the weight to be given to their testimony." TEX.R. CIV. P. 226a, approved instruction III. Their decision is not to be tampered with lightly, whether it favors the plaintiff or the defendant. The jury has, and should have, the final word on facts.

*Carr v. Jaffe Aircraft Corp.,* 884 S.W.2d 797, 799 (Tex.App.—San Antonio 1994, no writ).

■ Wal–Mart asserts that there is not only insufficient evidence, but no evidence: *i.e.,* a complete absence of evidence of a vital fact, or, if there is anything, it is no more than a mere scintilla of evidence. We think there was legally sufficient evidence to support the verdict. Differing negligence cases, by their nature, require differing amounts of evidence to be legally sufficient. A manufacturing defect might take several experts and several volumes of testimony to be legally sufficient. A car wreck would ordinarily take less, and a slip and fall still less. There is simply less to say. The facts are usually nondramatic, although the results of falling down can produce impressive injuries. The pratfall is a standard routine of the comedian, but in reality it can be a serious thing.

This is especially so in an aging, overweight woman such as Mrs. Gonzalez.

A plaintiff has the obligation to produce the evidence that exists. If a court requires more than is possible to prove, the court has taken over the legislative function of simply deciding that there will be no negligence cause of action for slip and falls. No court has done this, and the cause of action exists. The great majority of slip-and-fall cases are lost at the trial level and, no doubt, always will be. But this court is not willing to say that an injured person must go beyond the evidence that is created by the operative facts, which would be an impossibility. Of course, there may be cases where there is simply not enough evidence to make a case, even if it is all produced. This is not such a case though.

In Mrs. Gonzalez's case, she had to first prove that there was a dangerous condition on the floor. She did that. The macaroni salad was there. No one has denied it and, in fact, one of the defenses raised was that Mrs. Gonzalez, herself, had spilled the salad. However, the jury chose not to believe this version. It is neither likely that Wal–Mart purposely put their own salad on the floor, nor that they knew about the spillage and simply chose to ignore it. The real issue is whether there was constructive knowledge. In a case such as this, constructive knowledge is proved by the passage of time. Passage of time in a spillage is not usually measured in days, but lesser measures. Once having proved it was there, Mrs. Gonzalez had to prove that it had been there for a sufficient length of time so it should have been cleaned up. Her evidence of the amount of time that the salad was on the floor was as follows: (*l*) it had "a lot of dirt" in it; (2) there were cart tracks caused by people walking through the spillage pushing their carts; (3) the tracks were not made by Mrs. Gonzalez as she had no cart; and (4) the spillage "seemed like it had been there awhile." A jury could reasonably infer that Wal–Mart does not sell dirty macaroni salad, and that if the salad was dirty, it was probably because it had been there long enough to get dirty. A jury might reasonably infer that if there are cart tracks run-

ning through salad on the floor where people have been walking and pushing their carts, that is evidence that the spill did not just happen moments before. A jury might reasonably believe the description given by the only eyewitnesses that the spillage had the general appearance of being old or, as they succinctly put it, "seemed like it had been there awhile." Wal–Mart was unable to say when the floor had last been cleaned. Instead, Wal–Mart could prove only when it should have been cleaned. As there was also evidence that cleaning was in progress after the event when it was not scheduled to be done, a jury may have reasonably inferred that the cleaning of the floor was off schedule. Because Wal–Mart, with all of its employees and servants, chose not to put anyone on the stand to say when they actually cleaned the area, a jury might have reasonably inferred that it was because it had not been cleaned recently enough to assist Wal–Mart in defeating Mrs. Gonzalez's proof.

What additional proof was possible? Spilled macaroni salad does not lend itself to carbon–14 dating, or any other scientific testing. Circumstantial evidence is the norm; definitive proof is the exception. Circumstantial evidence is not beyond the jury's capabilities. It is commonplace in many jury trials.

Appellate courts reviewing slip-and-fall cases reach differing results. This is appropriate because each case is fact specific. A banana peel that was "gooey," "black with yellow stripes," "brown," and looked like it was several hours old was sufficient evidence to support a jury verdict in *J.C. Penney Co., Inc. v. Chavez*, 618 S.W.2d 399, 401 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.). On the other hand, cart tracks in water were not sufficient evidence to establish that the water had been there a sufficient time to give the store constructive notice in *Robledo v. Kroger Co.*, 597 S.W.2d 560, 561 (Tex.Civ. App.—Eastland 1980, writ ref'd n.r.e.). It might be observed that tracks in water would be more transitory than tracks through more solid matter. Tracks in water could not show too much, except that the spill was of recent origin. Tracks through solid matter,

on the other hand, will presumably last until cleaned up. Evidence that grapes were smashed and dirty was sufficient to establish constructive knowledge in *H.E.Butt Grocery Co. v. Heaton*, 547 S.W.2d 75, 76 (Tex.Civ. App.—Waco 1977, no writ). An unidentified, clear liquid with cart tracks and footprints, unseen by the plaintiff before or after the accident, did not establish constructive knowledge in *Kimbell, Inc. v. Blount*, 562 S.W.2d 10, 13 (Tex.Civ.App.—Austin 1978, no writ). *Wyatt v. Furr's Supermarkets, Inc.*, 908 S.W.2d 266, 268–69 (Tex.App.—El Paso 1995, writ denied), upheld a summary judgment for the defendant when the plaintiff fell outside the store on dried gum that was on the sidewalk. The gum was not slippery, and both the trial court and the court of appeals were puzzled as to how one could slip or trip over dried gum. *Wyatt*, 908 S.W.2d at 269. The court found no constructive notice, but distinguished the *Heaton* case: "The *Heaton* case involved that quintessential dangerous condition, dirty and desiccated grapes on the floor. . . . We note, too, that grapes on the floor are far more hazardous than gum, and that knowledge of a hazard is therefore easier to infer in the *Heaton* set of facts." *Id.* at 268.

The set of facts in the present case is far closer to *Heaton* than *Wyatt*. The incident at issue in the present case happened inside the store, not out on the sidewalk. The present case involved a slippery spillage, not dried gum. And, importantly, the present appeal is from a jury verdict, which was upheld by the trial court that also heard and saw the evidence. We recognize there was some contradictory evidence that was before the jury, such as the salad spillage still being "humid," "fresh," or "wet." Had the jury found no negligence, there would be evidence to support such a verdict. But they did not. And there is evidence to support what the jury did find.

We overrule points of error one and two.

**b. Insufficient Evidence of Damages (Point of Error Four)**

Wal–Mart's fourth point of error also complains of insufficient evidence, but the challenge this time is directed to the damages.

As the previous legal discussion on insufficiency-of-evidence challenges also applies to this point of error, we examine it next. The jury awarded $96,700 as the total damages for (a) physical pain and mental anguish in the past, (b) medical care in the past, (c) physical impairment, and (d) physical pain and mental anguish in the future. It is Wal–Mart's position that this is "grossly excessive." The evidence of the seriousness of Mrs. Gonzalez's injuries is conflicting, as is customary in a case of this nature.

Wal–Mart feels that the injuries, at worst, are confined to bruises and strains. Wal–Mart also points to the abundant pre-existing conditions and excessive weight problems of Mrs. Gonzalez. There is evidence to support this view of the matter. The testimony of Wal–Mart's expert medical witness, Dr. Turpin, can fairly be characterized as indicating that not much happened to Mrs. Gonzalez as a result of this fall, physically or mentally. If Dr. Turpin's testimony was the only evidence on damages, only a fraction of the damages awarded would be justified. Dr. Turpin was not the only medical expert who testified at trial, however, and he had never treated Mrs. Gonzalez, or even seen her before. He only reviewed her records. He was paid $800 an hour, plus expenses, as compensation for his testimony. Moreover, he had testified for Wal–Mart on a number of prior occasions. It is obvious by the verdict that the jury did not believe all of Dr. Turpin's testimony.

There was other testimony that Mrs. Gonzalez was significantly injured by the fall. This evidence came from both expert and lay testimony. Dr. DeFoire, a chiropractor who actually treated Mrs. Gonzalez, testified to demonstrated injury to her neck, back, and knee. He testified to large areas of bruising, and limitations of movement in her lower back, shoulder, and left knee. He said these injuries were a result of the fall at Wal–Mart. He also testified that Mrs. Gonzalez was in significant pain from the accident. He described to the jury his own treatment of Mrs. Gonzalez and stated that she was initially confined to a wheelchair, but later graduated to a cane.

Veronica Gomez, the daughter of Mrs. Gonzalez, testified that before the accident, her mother had no trouble walking or taking care of her husband and grandchildren. She said that since the accident, her mother can do none of those things. She further testified that her mother could no longer groom herself or do her household chores. Now, a woman must come in and help the Gonzalez family in their ordinary living tasks. Mrs. Gonzalez, in her own behalf, testified to much of the same. She also told of unrelenting pain. She testified regarding the various medications she had taken, but said that she still continues to suffer. She told of various things she could do before, but cannot do today. She said she had been in pain since the fall and was in pain at the time of trial, but she said that she had "been trying to get accustomed to it going away."

When evidence is conflicting, it is within the province of the jury to judge the credibility of witnesses and the weight to be given their testimony. *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630, 634 (Tex.Civ. App.—Corpus Christi 1981, no writ). Because personal injury damages are unliquidated and are not capable of certain measurement, the jury has broad discretion in assessing the amount of damages in a personal injury case. *See Transit Management Co. of Laredo v. Sanchez*, 886 S.W.2d 823, 826 (Tex.App.—San Antonio 1994, no writ); *Baylor Medical Plaza Servs. v. Kidd*, 834 S.W.2d 69, 78 (Tex.App.—Texarkana 1992, writ denied); *Pipgras v. Hart*, 832 S.W.2d 360, 366 (Tex.App.—Fort Worth 1992, writ denied). Particularly, damages for items such as pain, suffering, mental anguish, and disfigurement are incapable of precise measurement. Therefore, the reviewing court must defer to the jury's discretion in determining awards for these elements of damages. *See George Grubbs Enters., Inc. v. Bien*, 881 S.W.2d 843, 858 (Tex.App.—Fort Worth 1994), *rev'd on other grounds*, 900 S.W.2d 337 (Tex.1995); *Arrington v. Paschall*, 352 S.W.2d 866, 870 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). Based on the record before us, we cannot say that the jury's finding regarding damages is so against the great weight and preponderance of the evidence that it is manifestly unjust.

Appellant's fourth point of error is overruled.

### c. Undesignated Expert Witness (Point of Error Three)

In its third point of error, Wal–Mart contends that the trial court erred when it allowed Dr. DeFoire to testify because he was an undesignated expert witness. In response to Wal–Mart's pre-trial discovery requests, Gonzalez designated three doctors as potential expert witnesses: Dr. Rodriguez, Dr. Nunnery, and Dr. Peña. All three doctors had treated Mrs. Gonzalez, as had Dr. DeFoire, who worked as an associate of Dr. Peña. Both sides had the medical records of all four doctors. At trial, Dr. Peña was out of town. Gonzalez called Dr. Peña's associate, Dr. DeFoire. Wal–Mart objected, and there was a hearing out of the presence of the jury. The objection was grounded on a violation of Texas Rule of Civil Procedure 215(5), which states:

> A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

TEX.R. CIV. P. 215(5).

■ However, we do not decide this point on whether or not the trial court abused its discretion in allowing the testimony by implicitly finding good cause. We think the objection was waived, and this point is not properly preserved for appeal. Wal–Mart timely made its objection, but before the court ever made any ruling, Wal–Mart said the following:

> If he wants to prove up the records for Allied Medical Health, as a fact that he's a custodian of records, then he can do that, but he cannot testify as to any medical treatment provided to this Plaintiff because he is not listed as a testifying witness.

The trial court then stated: "Okay. Then it's in the record. Go ahead and call the witness. Bring the jury." This is not a ruling. It is simply a statement of the obvious—that the matter had been written down by the court reporter and was "in the record." Nor can the words, "Go ahead and call the witness" be construed as a ruling. Rather, the trial court seems to have acquiesced to what the parties had decided, though it is not clear what they decided. Wal–Mart attempted to lay down guidelines on the subject matter to which the doctor could testify, but Gonzalez did not agree to this restriction. Wal–Mart was apparently satisfied with what the court said because no further objection was made. The witness was called, quietly took the stand, and began to testify. The doctor's testimony, on direct and cross, extends over the next sixty-two pages of the statement of facts. Not a single objection was made to any question or answer of Dr. DeFoire on the grounds that it exceeded the scope to which Wal–Mart had agreed. The issue of him not being designated was never mentioned. On appeal, Wal–Mart says Dr. DeFoire exceeded any agreement that it made. But Wal–Mart apparently did not think so at the time and, more importantly, if it did, it never gave the trial court an opportunity to rule on its misgivings. The entire sixty-two pages reflects that Wal–Mart made only the following four objections: (1) improper authentication of photographs of Mrs. Gonzalez's bruises, (2) a hearsay objection on Dr. Nunnery's records when being offered into evidence, (3) a leading objection, and (4) a repetition objection. None of these points are complained about in this appeal.

Wal–Mart cites several cases that stand for the principle that if a party raises a proper objection to the introduction of certain testimony, and the trial court overrules the objection, the objecting party does not have to continue objecting to the same testimony each time it comes up. We agree that the practicalities of trial practice may necessitate a breaking off of continuous objections to the same evidence once it is clear what the objection is, to what it refers, and once the trial court has clearly made a ruling. A

running objection is often made under these circumstances. Even that step may not always be necessary if the record and ruling are clear enough. But in this case, the trial court had no way of knowing when Wal–Mart felt its voluntary limits had been transgressed in Dr. DeFoire's testimony. As an appellate court, neither do we. Nor do we know how the trial court would have ruled had the objection been properly lodged.

We overrule appellant's third point of error.

### d. Insufficient Evidence of Future Medical Care (Point of Error Five)

■ Wal–Mart's fifth point of error complains of the $3,300 award for "medical care which in reasonable probability will be sustained in the future." Wal–Mart points out that Gonzalez did not present any competent, nonspeculative evidence that she would need future medical care. In her reply brief to this point of error, Gonzalez concedes to a lack of evidence in support of this jury finding. We also agree.

We sustain Wal–Mart's fifth point of error and reform the judgment entered in Gonzalez's favor by reducing the amount of total damages by the $3,300 awarded for future medical care.

The trial court's judgment is affirmed as reformed.

ANGELINI, Justice, dissenting.

I respectfully dissent. In my opinion, the evidence was legally and factually insufficient to prove Wal–Mart had constructive knowledge of the macaroni on the floor.

### SLIP AND FALL LIABILITY IN GENERAL

The prevalent theme winding throughout the majority opinion is the recognition that plaintiffs in premises liability cases such as this one face difficulties in proof. While it is true that plaintiffs face an uphill battle in proving liability of business owners in slip and fall cases, there are sound policy reasons for this difficult burden. If slip and fall plaintiffs were not required to prove knowledge and/or constructive knowledge of dangerous conditions, business owners could very well become insurers of all their patrons, subject to strict liability for injuries occurring on their premises regardless of fault. *See Garner v. McGinty*, 771 S.W.2d 242, 244 (Tex.App.—Austin, 1989, no writ) (holding occupier of business premises is not insurer of safety of invitees); *see also* W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 11, at 425 (5th ed. 1984). While it may seem an onerous burden for plaintiffs to prove constructive knowledge, imagine the burden strict liability would place on business owners, a burden which would, no doubt, be passed on to the consumer.

In its opinion, the majority discusses the standard of review and recognizes the fact that, under the current state of Texas law, constructive knowledge must be proven in order for the plaintiff to recover. Although finding the evidence sufficient to support the jury's finding of constructive knowledge, the majority opinion, nevertheless, includes a discussion concerning the plaintiff's difficult burden in slip and fall cases which could be read to indicate that slip and fall plaintiffs should be held to a reduced burden of proof. Specifically, the majority opinion states:

A plaintiff has the obligation to produce the evidence that exists. If a court requires more than is possible to prove, the court has taken over the legislative function of simply deciding that there will be no negligence cause of action for slip and falls. No court has done this, and the cause of actions exists. The great majority of slip-and-fall cases are lost at the trial level, and no doubt, always will be. But this court is not willing to say that an injured person must go beyond the evidence that is created by the operative facts, which would be an impossibility.

In the above-quoted paragraph, the majority seems to be saying that, because the plaintiff can only prove what is possible to prove with the evidence that exists, she should not be penalized and denied recovery if she is unable, by such evidence, to prove her case. The majority does recognize that there may be some cases where there is "simply not enough evidence to make a case, even if it is all produced," but that "[t]his is not such a

case." However, if the evidence is legally and factually sufficient in this case, I am puzzled by the majority's statements implying that plaintiffs should not be denied recovery in slip and fall cases even when the "operative facts" are not sufficient to prove a case. Of course, plaintiffs as well as defendants, in any kind of case, are limited to proving "the operative facts." To go beyond such evidence would require the parties to manufacture evidence that does not exist. No party is or should be required to do that. However, if the evidence does not exist, it does not exist. Our system of justice requires plaintiffs to bear the burden of proof in all types of cases. If they cannot do so, they cannot recover. The harsh reality is that if the plaintiff cannot prove facts to support her cause of action, there is simply no recovery. This is true not only in slip and fall cases, but in all cases.

The fact that constructive knowledge in a slip and fall case is often difficult to prove is no reason to hold plaintiffs in such cases to a reduced burden of proof. The majority points out that different types of negligence cases require different amounts of proof to be sufficient, and, that by its nature, a slip and fall case requires less evidence than other types of negligence cases because "[t]here is simply less to say." There may, in fact, be less to say in terms of how many witnesses testify, how much they have to say about the condition of the premises, and how many lines and pages of testimony appear in the statement of facts. But, the fact that there is less quantitative evidence available does not and should not translate into requiring a reduced burden of proof. The fact remains that, in order to hold a business owner liable for a slip and fall injury, the plaintiff must prove knowledge or constructive knowledge of the hazardous condition. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). Anything less would amount to a form of strict liability which is simply not the law.

## EVIDENCE OF CONSTRUCTIVE KNOWLEDGE

Whether Wal–Mart had constructive knowledge of the macaroni on the floor is the central issue in this case. Thus, the evidence must be reviewed, using the proper standard of review, as it relates to the length of time the macaroni was on the floor before Mrs. Gonzalez's fall. In other words, what evidence was adduced at trial to show whether the macaroni was on the floor for such a length of time that Wal–Mart should have discovered it and removed it in the exercise of ordinary care? *See Keetch v. Kroger*, 845 S.W.2d 262, 265 (Tex.1992).

The facts relating to the condition of the macaroni are not in dispute. Mrs. Gonzalez testified that she was walking down a very busy aisle, next to the refrigeration cases in Wal–Mart. She was walking toward an empty shopping cart when she slipped and fell on what she later identified as cooked macaroni. She testified that the macaroni had mayonnaise in it and that it appeared to be "fresh," and "wet," and "still humid." Mrs. Gonzalez admitted that she had no knowledge of how long the macaroni had been on the floor when she fell, but she stated that it had a "lot of dirt" in it. Veronica Gomez, Mrs. Gonzalez's daughter, testified that she was shopping with her mother on the day of the accident. She was on another aisle when she heard her mother call for her. She found her mother lying on the floor, next to the refrigeration cases. She did not actually see her mother fall. Mrs. Gomez testified that her mother had slipped on a "piece of macaroni." She noticed that her mother had some of the macaroni on her shoes. She also admitted she did not know how long the macaroni had been on the floor but that it "seemed like it had been there a while" because it had track marks in it. In summary, the evidence shows that, after Mrs. Gonzalez fell, the macaroni was observed to be fresh, wet, humid, dirty and having track marks in it. Although the majority opinion indicates there was "some contradictory evidence" regarding the appearance of the macaroni on the floor, I respectfully disagree. The record indicates that no one saw the macaroni on the floor before Mrs. Gonzalez fell. The only testimony regarding the condition of the macaroni after the fall came from Mrs. Gonzalez and her daughter, Mrs. Gomez. Their testimony was not contradicted by any other witnesses or by any Wal–Mart employee. The contradictory evidence

referred to by the majority was, apparently, the fact that the macaroni was both dirty and fresh and that, although it was wet, it seemed like it had been there a long time because it had cart tracks through it. As discussed below, these are not necessarily contradictory facts.

In cases involving similar facts, the courts have held that the defendant did not have constructive knowledge of the condition. For instance, in *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983), the evidence showed the grapes on which the customer slipped were discolored and ruptured. The supreme court found this was not evidence of how long the grapes had been on the floor because the grapes could have ruptured before they fell on the floor or immediately before or during the customer's fall. *Id.* at 294. In *Safeway Stores, Inc. v. Harkless*, 601 S.W.2d 534 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.), the store customer slipped on brown water next to a flower display. The court found there was no evidence of how long the water had been on the floor because it could have fallen from a flower pot picked up by another customer shortly before the plaintiff's fall just as easily as it could have been there for a long period of time. *Id.* at 538. In *Robledo v. Kroger Co.*, 597 S.W.2d 560 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.), the court found that evidence that a customer slipped on dirty water that had cart tracks through it was no evidence from which the jury could infer how long the water had been on the floor because the cart tracks could have been made by the customer's fall or by another customer minutes before the fall. *Id.* Also, in *Kimbell, Inc. v. Blount*, 562 S.W.2d 10 (Tex.Civ. App.—Austin 1978, no writ), the court found that where drying footprints and tracks were leading away from a puddle of water, there was no evidence that the puddle had been on the floor for such a length of time to give constructive notice to the store employees. *Id.* at 13.

Similarly, in this case, the fact that the macaroni appeared dirty and had tracks through it is no evidence of the length of time the macaroni had been on the floor. As in the above-cited cases, it could just as

reasonably be inferred that the dirt and tracks were made by other customers just minutes before or by Mrs. Gonzalez herself during the course of the fall.

In contrast, in those cases where constructive knowledge has been imposed, the facts were different from those in this case and others where constructive knowledge was found lacking. For instance, in *J.C.Penney Co., Inc. v. Chavez*, 618 S.W.2d 399 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.), the plaintiff slipped on a black and "gooey" banana peel. The court found there was some evidence the store employees should have detected and removed it because only fresh, yellow bananas were available at the store. *Id.* at 401. In *Furr's Super Market v. Garrett*, 615 S.W.2d 280 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.), the plaintiff fell in a "pool" of water which resulted in her clothes being soaked wet. This happened in the vicinity of five store employees. The court found the employees should have detected that much water before the customer fell. *Id.* at 281–82. In *Albertson's, Inc. v. Mungia*, 602 S.W.2d 359 (Tex.Civ.App.—Corpus Christi 1980, no writ), there was a substantial leak in an ice machine next to a check-out stand. The court found this should have been detected by an employee because it is well known that melting ice and water has a tendency to accumulate close to an ice machine. *Id.* at 362–63. And, in *H.E. Butt Grocery Co. v. Heaton*, 547 S.W.2d 75 (Tex. Civ.App.—Waco 1977, no writ), the court held there was sufficient evidence to impute constructive knowledge where the customer slipped on grapes that were smashed, spread out, and drying, and the same layer of dirt covering the floor also covered the grapes. *Id.* at 76.

It is well settled that in conducting a sufficiency review, the reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex.Civ. App.—El Paso 1981, no writ). It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibili-

ty of the witness's testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 797 (1951). In this case, however, as stated above, there is no conflicting evidence. The undisputed evidence is simply that Mrs. Gonzalez slipped on some macaroni salad, it had some dirt in it, it had track marks in it, and it looked fresh and wet. The pivotal question is whether this evidence is sufficient to support a finding that the macaroni salad was on the floor long enough to charge Wal–Mart with constructive notice of its presence. Whether a duty exists "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

Based on the above-cited authorities, the evidence in this case is legally and factually insufficient to support a finding of constructive knowledge. The macaroni salad was not in a drying condition or discolored as in *Chavez* and *Heaton.* There was not a large amount of it as in *Garrett.* There was no indication there were store employees in close proximity to the macaroni salad at or near the time that Mrs. Gonzalez fell as in *Mungia.* As in *Robledo,* there is no evidence that Mrs. Gonzalez did not make the tracks in the macaroni salad when she fell, or that another customer traversing the busy aisle did not make the tracks just minutes before Mrs. Gonzalez fell. There is simply no evidence from which the jury could infer how long the macaroni salad had been on the floor.

The majority concludes that the jury could have inferred from the track marks that the macaroni salad had been on the floor for a sufficient amount of time to impute knowledge to Wal–Mart's employees. The majority attempts to distinguish tracks through water from tracks through macaroni by stating that tracks through water are transitory whereas tracks through solid matter will presumably last until cleaned up. While that may be true, the fact that there were track marks is still no evidence of how long the macaroni had been on the floor because, under the facts in this case, there is simply no way of knowing how long the track marks had been there. The majority likens this case to the *Heaton* case, which involved a slip and fall on smashed and dirty grapes. *See Heaton,* 547 S.W.2d at 75. In that case, however, the dangerous condition was caused by grapes on the floor. The grapes were described as "smashed and spread out", "the juice had been pressed out of them", and "they were in a drying stage." Further, there were footprints and cart tracks in them and, most importantly,"the same layer of dirt that was on the floor proceeded to cover the grapes as if they had been there for a great length of time." Further, as the majority noted, dirtyand desiccated grapes on the floor are considered the "quintessential dangerous condition." *See Wyatt v. Furr's Supermarkets, Inc.,* 908 S.W.2d 266, 268 (Tex. App.—El Paso 1995, writ denied). And, in such a situation, knowledge of a hazard is easier to infer. *Id.* Accordingly, the majority's reliance on *Heaton* is inappropriate to the facts of this case.

Because I am of the opinion there was no evidence that Wal–Mart had knowledge or constructive knowledge of the macaroni on the floor where Mrs. Gonzalez slipped and fell, I would reverse and render judgment in favor of Wal–Mart.