COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-322-CV
 
WAL-MART STORES, INC.       
           
           
           
           
 APPELLANT
V.
SELENE DIAZ           
           
           
           
           
               
APPELLEE
------------
FROM THE 48
TH DISTRICT COURT OF TARRANT
COUNTY
------------
OPINION
------------
I. Introduction
       
This is a premises liability, slip-and-fall case. On July 13, 2001, the jury
found appellant Wal-Mart Stores, Inc. negligent for failing to exercise ordinary
care in protecting appellee Selene Diaz from dangerous conditions in its store
and assessed damages at $25,000. The trial court rendered judgment accordingly,
and Wal-Mart appeals, challenging the judgment and jury verdict on the ground
that there was legally insufficient evidence that it had actual or constructive
knowledge of the dangerous condition. We reverse and render.
II. Factual and Procedural
Background
       
While shopping at a Wal-Mart store on April 15, 1998, Diaz slipped and fell into
a sitting position in the bedding aisle. After falling down, she looked around
and noticed a pillow sticking out about a foot or more from the lower shelf. The
pillow concealed a small McDonald's cup that was tipped over. Presumably, the
cup was left by a customer who visited the McDonald's located in the Wal-Mart
store. Diaz testified that near the cup was "transparent liquid."
There is no evidence, however, as to how much liquid was on the floor. A lid and
straw were also located inches away from the cup.
       
Diaz testified at trial that she did not see any ice, that she felt wetness on
her arm that was sticky, and that she did not see liquid or the cup before she
fell. She also stated that the liquid was clear and that there were no
footprints, dirt, or cart tracks in it. Diaz did not know how long the liquid
had been on the floor, and she had only been in the aisle moments before she
fell.
       
Julie Williams, a Wal-Mart employee, testified that a customer had reported
Diaz's fall to her. Williams stated that she had not walked down the aisle where
Diaz fell at any time before the accident that day and did not know whether any
other employees had recently inspected it. When Williams first arrived at the
scene of the fall, she did not see the pillow, the cup, or the spill. Williams
then called for management and a Spanish-speaking employee.
       
Paul Lile, a Wal-Mart manager, arrived with Rose Buentello, a Wal-Mart employee
who spoke Spanish. Rose noticed a little bit of clear liquid on the floor, which
was located only near where the cup lay. Rose testified that Diaz told her she
had tripped over a comforter and did not see the cup that was under it. Wal-Mart
then called an ambulance, which took Diaz to the hospital.
       
After Diaz left, Williams inspected the area where Diaz fell and saw the cup a
couple of feet from where Diaz had been sitting. She said the cup was standing
upright next to the shelf. The only liquid she saw was "sweat" on the
cup and a "ring" around the cup. The ring of liquid was mostly clear
and looked like "watered down soda."
       
Diaz filed suit against Wal-Mart for negligence on January 5, 1999. In her most
recent pleading, she alleged that Wal-Mart was liable for the premises defect
and for failing, among other things, to inspect and maintain the premises and
warn about the defect, the spilled drink. Diaz also alleged that Wal-Mart was
negligent in allowing its customers to carry uncovered drinks on its premises.
The case went to trial on July 2, 2001. After Diaz presented her case, Wal-Mart
moved for a directed verdict on the ground that Diaz had failed to present
legally sufficient evidence of actual or constructive notice of the defect. The
trial court denied the motion, and following Wal-Mart's defense, the jury found
it one hundred percent liable for Diaz's injuries and awarded her $25,000 for
past damages. After the judgment was rendered, Wal-Mart moved for judgment
notwithstanding the verdict, which was also denied. Wal-Mart then appealed.
III. Premises
Liability--The Slip & Fall Case
       
The sole issue in this case is whether there was legally sufficient evidence
showing that Wal-Mart had actual or constructive notice of the premises defect,
the spilled drink. In determining a "no-evidence" issue, we are to
consider only the evidence and inferences that tend to support the finding and
disregard all evidence and inferences to the contrary. Bradford v. Vento,
48 S.W.3d 749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v. Cazarez,
937 S.W.2d 444, 450 (Tex. 1996); In re King's Estate, 150 Tex. 662, 244
S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally
sufficient to support the finding. Cazarez, 937 S.W.2d at 450; Leitch
v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).
       
A "no-evidence" issue may only be sustained when the record discloses
one of the following: (1) a complete absence of evidence of a vital fact; (2)
the court is barred by rules of law or evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla of evidence; or (4) the evidence
establishes conclusively the opposite of a vital fact. Uniroyal Goodrich
Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W.
Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX.
L. REV. 361, 362-63
(1960)), cert. denied, 526 U.S. 1040 (1999). There is some evidence
when the proof supplies a reasonable basis on which reasonable minds may reach
different conclusions about the existence of the vital fact. Orozco v.
Sander, 824 S.W.2d 555, 556 (Tex. 1992).
       
Diaz was a Wal-Mart invitee. As such, Wal-Mart owed her "a duty to exercise
reasonable care to protect her from dangerous conditions in the store known or
discoverable to it." Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d
934, 936 (Tex. 1998). This duty did not, however, make Wal-Mart an insurer of
her safety. Id.; McElhenny v. Thielepape, 155 Tex. 319, 285
S.W.2d 940, 941 (1956). To recover damages, Diaz had to prove:

 (1) Wal-Mart's actual or constructive
 knowledge of some condition on the premises;
 (2) That the condition posed an
 unreasonable risk of harm;
 (3) That Wal-Mart did not exercise
 reasonable care to reduce or eliminate the risk; and
 (4) That Wal-Mart's failure to use such
 care proximately caused her injuries.

H.E. Butt Grocery Co. v. Resendez,
988 S.W.2d 218, 219 (Tex. 1999); Gonzalez, 968 S.W.2d at 936; Corbin
v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983).
       
To show that Wal-Mart had actual or constructive knowledge, Diaz had to show
that Wal-Mart either: (1) put the foreign substance on the floor or (2) knew
that it was on the floor and negligently failed to remove it or (3) that the
substance was on the floor for so long that, in the exercise of ordinary care,
it should have been discovered and removed. Wal-Mart Stores, Inc. v. Reece,
81 S.W.3d 812, 814 (Tex. 2002); Richardson v. Wal-Mart Stores, Inc.,
963 S.W.2d 162, 165-66 (Tex. App.--Texarkana 1998, no pet.). The fact that the
owner or occupier of a premises creates a condition that poses an unreasonable
risk of harm may support an inference of knowledge. Keetch v. Kroger Co.,
845 S.W.2d 262, 265 (Tex. 1992). The jury must still find, however, that the
owner or occupier knew or should have known of the condition. Id.;
see also Corbin, 648 S.W.2d at 296. Making the inference as a
matter of law is improper unless knowledge is uncontroverted. Keetch,
845 S.W.2d at 265.
       
Diaz relies on our opinion in Wal-Mart Stores, Inc. v. Rangel to argue
that there was sufficient evidence to support the jury's finding of actual and
constructive notice. 966 S.W.2d 199, 202 (Tex. App.--Fort Worth 1998, pet.
denied). Rangel involved facts almost identical to the facts in this
case. Relying on Corbin, we held in Rangel that Wal-Mart's
policy of allowing its customers to carry food and drink into the store created
a foreseeable danger and risk of harm that Wal-Mart negligently failed to
prevent by ordinary care with reasonable precautions. Id. The mere fact
that Wal-Mart allows its customers to carry drinks in its store, however, does
not, without more evidence, show a condition on the premises that poses an
unreasonable risk of harm. See Resendez, 988 S.W.2d at 219 ("As a
matter of law, . . . the mere fact that a store [owner] has a customer sampling
display cannot, without more, be evidence of a condition on the premises that
poses an unreasonable risk of harm."). Under the reasoning in Rangel,
the premises owner becomes liable not only for a dangerous condition that occurs
on its premises and causes injury, but also for allowing the condition to occur.
This reasoning extends the scope of responsibility for a premises owner further
than contemplated by previous and subsequent slip-and-fall cases.
       
Recently, the Texas Supreme Court in Wal-Mart Stores, Inc. v. Reece
held that Wal-Mart was not liable to a customer who slipped on a spill in the
store snack bar where there was no evidence that the spill was conspicuous or
seen by an employee before the accident and no evidence showing how long the
spill had been on the floor and when and how it got there. 81 S.W.3d at 816. The
court stated that in order to hold a premises owner liable for spills on its
floor,

 there must be some proof of how long the
 hazard was there before liability can be imposed on the premises owner for
 failing to discover and rectify, or warn of, the dangerous condition.
 Otherwise, owners would face strict liability for any dangerous condition on
 their premises, an approach we have clearly rejected.

Id. at 815. Other courts,
including this one, have addressed similar situations in the same manner. See
Green v. Kimbell, Inc., 647 S.W.2d 110, 113-14 (Tex. App.--Fort Worth 1983,
writ ref'd n.r.e.) (holding there was sufficient evidence that water from hose
used on produce had been on the floor for a sufficient length of time to warrant
sending issue of knowledge to the jury); Martin Theatres of Tex., Inc., v.
Puryear, 631 S.W.2d 600, 602 (Tex. App.--Beaumont 1982, no writ) (holding
that there was insufficient evidence that drink spilled by patron at movie
theatre had been on the floor for such a period of time that ordinary care in
making inspection would have resulted in its discovery).
       
As these cases make clear, in determining whether constructive knowledge exists
in the slip-and-fall case the issue is whether the substance had been on the
floor for so long a time that a reasonably prudent business owner exercising
ordinary care should have discovered it. The duty of the business owner is to
protect invitees from dangers of which it should know in the exercise of
ordinary care, "growing out of the latter's duty to inspect." Martin
Theatres, 631 S.W.2d at 602; see also CMH Homes, Inc. v. Daenen,
15 S.W.3d 97, 101 (Tex. 2000) ("Because the core of the duty depends on
actual or constructive knowledge of a dangerous condition that a reasonable
inspection would reveal, . . . it follows that an owner or occupier is not
liable for deterioration of its premises unless it knew of or by reasonable
inspection would have discovered the deterioration."). While a business
owner's policy of allowing customers to carry drinks in its store makes spills
foreseeable, the effect of the policy only determines what the standard of
ordinary care requires under the circumstances. The policy alone does not
establish negligence.
       
The holding in Rangel, however, had the effect of imputing knowledge of
the actual defect based on the fact that the owner should foresee a potential
defect solely because it allowed its customers to carry drinks on its premises.
By doing so, this court eliminated the duties to inspect and remove, upon which
premises liability is based, and made the business owner negligent even before
an actual defect occurs. Because the holding in Rangel had this effect,
we overrule it. Instead, the proper standard is to determine whether there was
sufficient evidence to show that the business owner actually or constructively
knew about the actual defect.
       
Diaz did not present any evidence that Wal-Mart or its employees created the
spill that caused her to fall. There is also no evidence that a Wal-Mart
employee possessed actual awareness of the spilled drink and failed to clean it
up. Thus, there is no evidence of actual notice, leaving Diaz with having to
show constructive notice.
       
To prove constructive notice in this case, Diaz needed to show that the spilled
drink existed for so long that Wal-Mart should have discovered it and removed it
in the exercise of ordinary care. Reece, 81 S.W.3d at 816-17;
Gonzalez, 968 S.W.2d at 935. This showing requires reliance on
circumstantial evidence. As such, Diaz had to establish "that it is more
likely than not that the dangerous condition existed long enough to give
[Wal-Mart] a reasonable opportunity to discover the condition." Gonzalez,
968 S.W.2d at 936.
       
The evidence showed that Wal-Mart trained its employees to look for any
potential hazards in the store and to remove them if found, regardless of where
the hazards were found. There is no evidence, however, as to how long the spill
had been on the floor or that it is more likely than not that the spill and cup
had been on the floor for such a lengthy period of time that Wal-Mart should
have discovered and removed them. Although Wal-Mart employees were trained to
periodically walk around areas of the store to look for hazards, there is no
evidence that an inspection of the aisle where Diaz fell did or did not occur at
any time before the accident. Therefore, it is impossible based on the evidence
to determine if the spill and cup had been on the aisle floor for any length of
time before the accident. As a result, we cannot determine if Wal-Mart breached
its duty of ordinary care by not frequently inspecting the aisle.(1) 
Accordingly, we hold there is no evidence to support the jury's finding that
Wal-Mart had actual or constructive knowledge of the spill and sustain
Wal-Mart's sole issue.
IV. Conclusion
       
Having sustained Wal-Mart's no-evidence issue, it is our duty to render judgment
for Wal-Mart because that is the judgment the trial court should have rendered.(2)
See TEX. R. APP.
P. 43.3; Vista Chevrolet, Inc. v. Lewis, 709 S.W.2d 176, 176 (Tex.
1986) (quoting Nat'l Life & Accident Ins. Co. v. Blagg, 438 S.W.2d
905, 909 (Tex. 1969)). Thus, we reverse the trial court's judgment and render
judgment for Wal-Mart.
 
                                                           
SAM J. DAY
                                                           
JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and WALKER, JJ.
 
WALKER, J. filed a dissenting opinion.
DELIVERED: May 29, 2003

 
COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-01-322-CV
WAL-MART STORES, INC.       
           
           
           
           
    APPELLANT
V.
SELENE DIAZ           
           
           
           
           
           
        APPELLEE
------------
FROM THE 48
TH DISTRICT COURT OF TARRANT
COUNTY
------------
DISSENTING OPINION
------------
       
I respectfully dissent to the majority's disposition of this appeal. Diaz
pleaded(3) and proved(4)
her case in reliance on our decision in Wal-Mart Stores, Inc. v. Rangel,
966 S.W.2d 199, 202 (Tex. App.--Fort Worth 1998, pet. ref'd).(5)
       
The trial court denied Wal-Mart's motion for judgment notwithstanding the
verdict in reliance on our decision in Rangel.(6)
       
Yet today, the majority overrules our Rangel decision and
renders judgment against Diaz on the very theory Rangel specifically
held was "not the standard Ms. Rangel had to meet." Id.
Because Diaz relied upon controlling precedent from this jurisdiction in
pleading and proving(7) her case in the trial
court, and because we are now overruling that precedent, I would remand this
case for a new trial in the interests of justice.(8)
Tex. R. App. P. 43.3(b).
 
                                                           
SUE WALKER
                                                           
JUSTICE
 
DELIVERED: May 29, 2003

1. Although it is difficult to prove whether a breach
occurred, the difficulty in proving the elements of a cause of action does not
relieve the plaintiff of its obligation to do so. See Gonzalez, 968
S.W.2d at 937 ("However, '[t]he fact that proof of causation is difficult
does not provide a plaintiff with an excuse to avoid introducing some evidence
of causation.'") (quoting Schaefer v. Tex. Employers' Ins. Ass'n,
612 S.W.2d 199, 205 (Tex. 1980)); Wal-Mart Stores, Inc. v. Gonzalez,
954 S.W.2d 777, 784 (Tex. App.--San Antonio 1997) ("[T]he harsh reality is
that if the plaintiff cannot prove facts to support her cause of action, there
is simply no recovery.") (Angeline, J., dissenting), rev'd, 968
S.W.2d 934, 937 (Tex. 1998) (relying on the dissent).
2. The dissent contends that the case should be remanded
because Diaz relied on our opinion in Rangel in pleading and proving
her case and because the trial court also relied on that opinion in denying
Wal-Mart's motion for judgment notwithstanding the verdict. A remand would be
appropriate, however, only if the burden of proof for liability under Rangel
was higher than the standard established by the supreme court in Reese
and Diaz lost in the first trial because she did not have the benefit of the
lower burden of proof. In such a case, Diaz would be entitled to an opportunity
to establish her claim on remand under the lower burden of proof. The burden of
proof under Rangel, however, is lower than the standard
established in Reese, and Diaz failed to present legally sufficient
evidence to meet her burden of proof under Reese's heightened standard.
Thus, remanding the case for a new trial would be a meaningless waste of
judicial resources because we know from the record before us that Diaz cannot
meet her burden of proof on retrial. We refuse to speculate, as the dissent
apparently does, that Diaz withheld evidence in the first trial because she
erroneously believed that Rangel's lower burden of proof applied and
that she will present these undisclosed facts in a second trial on remand.
Dissent EndNotes:
3. Diaz pleaded, "Defendant's actions in allowing
consumers to walk through the premises with McDonald's drinks was a repeated
activity. It was foreseeable that customers would spill these drinks."
4. Diaz's attorney elicited the following testimony from
Julie Williams, a Wal-Mart employee at the time of Diaz's accident:

 Q. Now, at the Wal-Mart that you worked at, the one that we're here today
 about, there was a McDonald's in there, correct?
 A. Yes, sir.
 Q. There were not any type of warning
 signs or anything like that to customers not to take their drinks from the
 McDonald's to walk though the Wal-Mart, was there?
 A. No.
 Q. And you've seen customers walking
 around the store with their McDonald's drinks, right?
 A. Yes, sir.
 Q. That wasn't an unusual sight, was it?
 A. No.
 
 5. In Wal-Mart Stores, Inc. v. Rangel, we held:

 In its brief, Wal-Mart maintains that
 Ms. Rangel did not prove that the store had constructive knowledge of the
 water and ice cubes because she could not show that the "substance had
 been on the floor for such a period of time that it would have been discovered
 and removed by the defendant in the exercise of ordinary care." However,
 that is not the standard Ms. Rangel had to meet. Rather than having to prove
 one particular instance of negligence or knowledge of one specific hazard (the
 water and ice), Ms. Rangel's right to recover from Wal-Mart required her to
 show that Wal-Mart had knowledge of the foreseeable harm that could
 result from the store's policy of allowing its customers to walk throughout
 the premises while carrying food and drinks.

966 S.W.2d at 202.
6. Diaz's response in opposition to Wal-Mart's motion for
judgment notwithstanding the verdict on the actual or constructive notice issue
contains three pages of discussion concerning our Rangel decision and
argues that Diaz adequately proved Wal-Mart's knowledge of foreseeable harm.
Specifically, Diaz explains:

 In this case, the store's assistant
 manager, who had worked fifteen years for Wal-Mart, testified that before Ms.
 Rangel fell, he was aware of the store's policy, he knew people would carry
 food and drinks through the store, they could spill or drop those items on the
 floor, and that it was foreseeable a customer might slip, fall, and be injured
 in a liquid spilled on the floor by another customer. He also testified that
 in spite of that foreseeability, there were only three routine "safety
 sweeps" of the floor during each day.

7. The majority acknowledges that Rangel
"had the effect of imputing knowledge of the actual defect based on the
fact that the owner should foresee a potential defect solely because it allowed
its customers to carry drinks on its premises." Yet, the majority holds
that, nonetheless, Diaz should have proved that Wal-Mart "actually or
constructively knew about the actual defect."
8. Appellate courts have remanded to the trial court in
the interest of justice when the applicable law has changed between the time of
trial and the disposition of the appeal or when precedent has been overruled. See
Tex. R. App. P. 42.3, 60.3; see, e.g., In re Doe, 19 S.W.3d 278, 290
(Tex. 2000) (Owens, J., concurring) (agreeing with remand to trial court in the
interests of justice for new hearing due to recent supreme court opinion on the
subject); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 26 (Tex. 1994)
(remanding to trial court in the interest of justice when trial had been
conducted before any supreme court opinion specifically addressed the standards
governing the imposition of punitive damages in bad faith cases); Boyles v.
Kerr, 855 S.W.2d 593, 603 (Tex. 1993) (remanding to trial court in the
interests of justice for new trial because supreme court held no cause of action
exists for negligent infliction of emotional distress and plaintiff chose to
proceed below only on that theory); Twyman v. Twyman, 855 S.W.2d 619,
626 (Tex. 1993) (remanding to trial court in the interests of justice for new
trial when case proceeded to trial on theory subsequently overruled by supreme
court); Westgate, Ltd. v. State, 843 S.W.2d 448, 455 (Tex. 1992)
(refusing to remand to trial court in the interests of justice for a new trial
but recognizing, "[T]he most compelling case for such a remand is where we
overrule existing precedents on which the losing party relied at trial"); Scott
v. Liebman, 404 S.W.2d 288, 294 (Tex. 1966) (remanding to trial court in
the interests of justice for a new trial and recognizing that the courts of
appeals are authorized to remand in the interest of justice); Tex. Dep't of
Transp. v. Bederka, 36 S.W.3d 266, 273 (Tex. App.--Beaumont 2001, no pet.)
(remanding to trial court in the interests of justice). The majority cites no
authority for its novel proposition that a remand in the interest of justice is
appropriate "only if the burden of proof for liability" under the
overruled precedent is "higher," and none of the cases cited above
recognize this distinction.