**J. C. PENNEY COMPANY, INC., Appellant,**

v.

**Rodolfo C. CHAVEZ, et ux., Appellees.**

**No. 1670.**

Court of Civil Appeals of Texas, Corpus Christi.

May 28, 1981.

Rehearing Denied June 25, 1981.

J. Robert McKissick, Milton E. Lorenz, Jr., Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellant.

William L. Morrow, Carinhas & Morrow, Brownsville, Edward F. Hensley, Jr., San Antonio, for appellees.

## OPINION

NYE, Chief Justice.

This is a slip-and-fall case. The defendant, J. C. Penney Company, Inc., appeals from a judgment entered by the trial court which awarded plaintiff R. C. Chavez damages for injuries sustained when he slipped and fell on a banana peel in defendant's Brownsville store. Trial was to a jury and judgment was entered in accordance with the jury's several findings. The jury found that:

1) the banana peel had been on the floor such a period of time that it would have been discovered and removed by a J. C. Penney Company employee in the exercise of reasonable care;

2) that on the occasion in question, the failure of any employee of J. C. Penney to discover and remove such banana peel was negligent;

3) that on the occasion, such failure of any employee of J. C. Penney to discover and remove such banana peel was a proximate cause of the fall of Rodolfo C. Chavez;

4) that plaintiff Rodolfo C. Chavez was injured as a result of the occurrence in question; and

5) that plaintiff Rodolfo C. Chavez did not fail to keep a proper lookout for his own safety at the time and place of the occurrence in question.

The jury further found Chavez' damages to be $210,000.00 for past and future physical pain and mental anguish, loss of future earning capacity, and past and future physical impairment. Additional sums of $8,000.00 for future medical treatment were also found by the jury. Only the first and second findings of the jury are challenged on appeal.

Defendant J. C. Penney contends first that the trial court erred in entering judgment in favor of plaintiff based on the jury's answer to special issue no. one because there was "no evidence", or "insufficient evidence", or it was "against the overwhelming weight and preponderance of the evidence" that the banana peel (upon which plaintiff slipped) had been on the floor for such a period of time that it would have been discovered and removed by an employee of Penney in the exercise of ordinary care. Appellant also asserts that the failure to discover and remove such banana peel was not negligence as a matter of law. A review of the pertinent testimony of the various witnesses is a necessary prelude to our decision on Penney's evidentiary points.

In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the jury findings and disregard all contrary evidence and inferences. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 359 (1960).

Following the no-evidence rule, we find from the voluminous record that there are two sets of evidentiary facts that could have been considered by the jury in answering the special issues. Viewing the evidence as we must, it shows that plaintiff Chavez went to Penney's store in Amigoland Mall in Brownsville, Texas, to purchase some fishing equipment. After he had paid for his purchase, and while he was leaving the store, he slipped and fell on a banana peel that was lying on the floor in front of the checkout counter of the J. C. Penney

store. At the time of the occurrence, Penney maintained a grocery department in its store located in a separate part of the building. Groceries were checked through a different cash register in another part of the building. The Penney personnel condoned the practice of permitting customers to consume food and drinks in the store, and they were aware that this occurred regularly.

In the grocery part of the store, Penney displayed bananas in open bins in the produce section. Normally they would remove any bananas that appeared to be discolored or dark due to age. These would be returned to the wholesalers. Evidence showed that it took approximately 36 hours for a fresh, unpacked banana to turn a dark color, i. e., from yellow to brown. Bananas would not be kept on display for sale to the public longer than 24 hours.

After plaintiff Chavez slipped and fell, a customer helped him to his feet and an employee of Penney brought him a chair. As he was sitting in the chair, a female customer came over and showed him a banana peel and said, "Look, this is probably what you fell on." The lady then gave the banana peel to the checker to throw away.

Several witnesses saw the banana peel after Chavez fell. It was discolored, "gooey" and "black with yellow stripes"; the "gooey" substance was from the inside of the peel; there was no fruit in the peeling; it was about four or five inches long; and after the fall, the marking on the floor was about a foot long. Mrs. White, who was standing in line behind plaintiff Chavez, stated that the banana peel looked like it was several hours old. She said that she would never buy a banana having a peeling on it that looked like that one. Her husband, Clifford White, the man who helped lift Chavez from the floor, described the banana peel as dark in color.

■ Since the evidence showed that only fresh, yellow bananas were available at the J. C. Penney store, the jury could have reasonably concluded that it was such a fresh banana when it was dropped, and that it turned dark and discolored only after lying on the floor for a long period of time.

The record showed that the counter at which Chavez fell was built so that it had an indentation under it where a customer could place his feet when standing at the cash register. It is also logical to believe, as apparently the jury did, that the banana peel was on the floor by the counter a long period of time without actually being discovered and removed by store personnel, and that had they been exercising reasonable care it would have been removed. Appellant's no-evidence points of error are overruled.

■ Appellant also raises an insufficient-evidence point of error regarding the jury's verdict. The duty of this Court, upon presentation of an insufficient-evidence point is to examine all the evidence, including any evidence contrary to the jury's verdict. If this Court finds that the evidence supporting the jury's finding is so weak or that the evidence to the contrary is so overwhelming that the finding should be set aside, then a new trial should be ordered. Otherwise, this Court will affirm the judgment. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 359 (1960).

■ Penney's routine cleaning procedures were for the cleaning crew, at the end of each day, to sweep up trash, wet-mop the floors, and then wax high-traffic areas with a buffing machine. This was done at night after the store was closed and was the only regular cleaning procedure undertaken. The store's two janitors were available at all times to sweep or to clean up spills. All of the store employees were instructed to take any necessary steps to keep the store clean and the floor free of foreign substances. Each morning the store manager, Kirkland, would routinely inspect the entire store, including the checkout area.

Kirkland testified that throughout the day of the accident he had periodically inspected the floor around the checkout counters, including checkout counter number 4, where the accident took place. Kirkland

assumed the duty of "floor man" and testified that he had walked up and down inspecting the checkout area that particular day. He specifically recalled looking at the floor of the aisle where the accident took place prior to Chavez' fall. He stated:

> "You stand right there by this till. If you have normal eyesight, you can see every inch of the floor space. So, you don't have to look down and stare. It is just looking in the vicinity of the area, watching the customers, looking down occasionally, walking up and down. I am going to say that in the period of time, a minute or two, I am positive I gazed at the floor. It had to be I gazed at the floor."

He watched Chavez make his purchase and saw him turn and fall. He observed the entire incident, but he did not see the banana peel.

The head cashier was the second of three Penney employees who had the immediate area under observation at all times. Sophia Davila inspected the checkout counters and made her routine rounds in the area. As part of her responsibilities, she made sure that there was no litter on the floor around the checkout counters. On the day of the accident, she was standing close to Kirkland. She had a clear view of the floor area in front of the checkout counter and was in a position to see Chavez and the area where he fell just as clearly as Mr. Kirkland. She did not see the banana peel.

The cashier at counter number 4 was the third employee who could see the entire floor area next to the checkout counter where Chavez fell. Ofelia Rodriguez stated that business on this particular day was "heavy". It was a busy day, and she had been working at her cash register without a break for four hours. It was part of her duties as a checker to see that there was nothing on the floor and to generally keep the counter and the surrounding area clean. She testified that while she was working she did not always have time to look at the floor, and on the day of the accident, she had not had an opportunity to check the floor in front of her counter. She did not see the banana peel before Chavez fell.

There is another set of evidentiary facts that was very interesting. The head cashier, Ms. Davila, observed a man carrying a young child eating a banana. Ms. Davila had watched the man carry the child throughout the store while the child was eating the banana. The banana was not a whole banana, but a peeled-down banana. The child appeared to be only one or two years old. Ms. Davila testified that the banana had brown spots on it. She watched the man at the cash register paying for his merchandise, and at that time, the child he was holding had a banana peel in his hand. She testified that at this time she checked the floor and it was clean. Shortly thereafter, she was called upon to make change. She stated that approximately two or three minutes passed between the time she saw the man and the child with the banana peel in front of the register and the time she was called to the accident scene. She did not see Chavez fall. Ms. Davila testified that she saw plaintiff Chavez in line somewhere behind the man and the child with the banana.

On cross-examination, Ms. Davila was asked why she was watching the man carrying the child with the banana. She stated, "because, you know how kids are. They are always spilling, dropping things when they eat. I just wanted to make sure the floor wasn't going to get any part of it." Ms. Davila inferentially admitted that she was distracted and turned away to take care of other business and did not further observe the child or the banana peel he was holding until after Chavez fell.

■ A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land or premises if, but only if, he

> "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

*Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex.Sup.1975).

■■■■ J. C. Penney Company as an occupier of the premises, had a duty to use ordinary care to keep the premises in a reasonably safe condition for its invitees or to warn them of the hazard. *J. Weingarten, Inc. v. Razey*, 426 S.W.2d 538 (Tex.Sup. 1968); *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368 (Tex.Sup.1963); *H. E. B. Food Stores v. Slaughter*, 484 S.W.2d 794 (Tex.Civ.App.—Corpus Christi 1972, writ dism'd). What constitutes a hazard or danger depends upon the facts or circumstances of each case. "Whether a condition constitutes a danger is a function of reasonableness. That is, if the ordinarily prudent man could foresee that harm was a likely result of a condition, then it is a danger." *Rosas v. Buddies Food Store*, supra at 537. The J. C. Penney store employees were charged with this type of responsibility.

They (Penney) sold foodstuffs in their store. They permitted patrons to eat bananas and other foods in their store. They apparently realized that this created a danger because they had three immediate employees commissioned to keep the premises in a reasonably safe condition. Yet the hazard was indisputedly there. They did not warn their invitee (Chavez) of the presence of this banana peel.

The store manager was standing in a position where he could see every square inch of the floor and did not see it. The head cashier had a clear view of the floor area in front of the checkout counter and did not see it. The cashier whose responsibility was to see to it that nothing was on the floor and to generally keep the counter and the surrounding area clear had worked many hours without a break and failed to check the floor in front of her counter. She did not see it. The jury found, in effect, that any one of these employees, had they exercised ordinary care, would have discovered and removed the banana peel from the floor. These store employees were commissioned to keep a lookout for the very thing that caused the mischief. They were admittedly in a position where they could

have seen and removed the banana peel—and did not. The jury found that this peel was there a sufficient length of time for these employees to have discovered it, had they exercised ordinary care.

After carefully reviewing the record, we find that there is evidence, both direct and circumstantial, that can and does uphold the jury's answer to the special issues. The points of error regarding factual insufficiency of the evidence are overruled. We find that the judgment of the trial court is not wrong or unjust. It is accordingly affirmed.

AFFIRMED.

## ON MOTION FOR REHEARING

BISSETT, Justice, dissenting.

I respectfully dissent. There is not a scintilla of evidence in the record that on the occasion in question any employee of J. C. Penney Company, Inc., appellant, knew that the piece of banana peel, which caused plaintiff to slip and fall, had been on the floor for such a period of time that it should have been discovered and removed by such employee in the exercise of ordinary care prior to the occurrence of the accident made the basis of this suit. The failure of any employee of appellant to discover and remove the banana peel from the floor before plaintiff slipped on it does not constitute negligence. The effect of the majority holding is to make J. C. Penney Company, Inc., an insurer of occupied premises.

The accident occurred in the department store of J. C. Penney Company, Inc., at the Amigoland Mall, in Brownsville, Texas, on November 5, 1976, at about 3 o'clock in the afternoon. The store opened at 10 o'clock in the morning. On that date, the appellant occupied about 40,000 square feet of floor space in the Mall; the department store used about three-fourths of the space and the remaining one-fourth was occupied by the grocery store, which, although owned by appellant, was operated independently of the department store by "Supermarkets Interstate," a subsidiary of appellant. The two stores were connected by a

passageway. The grocery store was "several hundred feet" distant from the area in department store where the accident occurred. Each store had separate checkout counters. Produce items (vegetables and fruits) were packaged and sealed by the cashiers in the grocery store before the customers who purchased them were checked out. Fruits, vegetables and groceries were never delivered to the grocery store through the area occupied by the department store. Each store was under separate management.

It was the routine of the cleaning crew for the department store, between the hours of 6 o'clock a. m. and 10 o'clock a. m. each day, to first pick up all trash on the floors, then to dust-mop them, then to damp-mop them, and finally to wax them. That routine was followed on the day of the accident. In addition, all personnel on duty, from the manager down through the checkers, were to be on the lookout at all times during shopping hours for foreign objects and spills on the floors and in the aisles.

The accident occurred in the check out aisle at cash register number 4. There were 14 checkout aisles (lanes), but only two, numbers 2 and 4, were in operation when plaintiff slipped and fell. Those two lanes were busy at the time. Three of appellant's employees were in the immediate area of the accident when it took place.

The banana peel, which plaintiff stepped on, was in the aisle or checkout lane, very near the cash register. It was about five inches long and approximately one inch wide. After plaintiff had paid for his purchases, he started to move forward and as he did, his left foot slipped on something and caused him to fall. No one saw the banana peel on the floor before the fall. As a result of plaintiff stepping on the peel, an area of a "gooey mess," about twelve inches long and three inches wide, was discovered on the floor. The same "gooey" substance was also found on plaintiff's shoe and on the inside of the banana peel. The gooey spot was in the aisle, a few inches from the cash register in lane number 4. There was no evidence, direct or circumstantial, that the "gooey" substance was on the floor prior to the accident; on the other hand, it is conclusively shown that the same was created when plaintiff's shoe came in contact with the piece of banana peel. Concerning the color of the peel, it was described as being either "dark," or "black with yellow stripes on it," or "brownish colored."

Testimony at the trial was as follows.

Plaintiff testified that when he joined the checkout line at cash register number 4, "there was a lady with a couple of kids right in front of me." He said that he did not look at the floor because: "how can you look at the floor if somebody was in front of you?"

Mrs. Sophie Davila, the supervisory cashier for the department store, was in the immediate area of cash register number 4 when the accident happened. She testified: 1) about *"two or three minutes"* before plaintiff slipped and fell, she saw a man in the checkout line at cash register number 4, "carrying a child about one or two years old"; 2) the child had "a peeled down banana"; 3) the "peel was in his hand"; 4) the man was "in front of checkout counter" and "was paying out" when she first observed him; 5) she looked around and observed "the floor area around where the man with the child was," because "you know how kids are; they are always spilling, dropping things when they eat; I just wanted to make sure the floor wasn't going to get any part of it"; 6) she did not see anything on the floor; 7) her attention was diverted from the area because she was then called upon by one of the cashiers "to make change," which she did; 8) next, the checkout girl at cash register number 4 (Ofelia Rodriguez) called her for assistance after plaintiff slipped. She did not see plaintiff when he slipped or fell. She further testified: 1) at the time she "observed the man holding the child with the banana," that there were people in the checkout line "behind him," and that plaintiff was in that line; 2) there were other people in the line behind plaintiff. She was asked the question: "Was there anything on the floor in front of Ofelia's counter back at the time

you observed the man with the child in his arms eating the banana?" She answered: "No, there was nothing."

Miss Ofelia Rodriguez was the cashier for cash register number 4 on November 5, 1976. According to her, business was "heavy" at the time of the accident. On the day of the accident she was so busy with her checkout duties that she was unable to inspect the floor area in the vicinity of her cash register. She did not see the banana peel until after plaintiff had fallen. She stated that there were people ahead of plaintiff in the checkout line, and that she "had checked people out immediately before he got up there."

Mrs. Mabel White, a customer, was standing in the checkout line immediately behind plaintiff when he slipped and fell. She had been in the line "a few minutes" when the accident occurred. When plaintiff was "helped" up, she "saw the banana peel and a mess on the floor." She placed the "gooey" spot on the floor as being "a few inches from the checkstand," and along "a little ledge." She picked up the banana peel and handed it to one of appellant's employees, who threw it away.

Mr. Clifford White, husband of Mrs. Mabel White, was standing behind his wife when plaintiff fell. He did not see the banana peel until after the fall. He said that he did not "have any idea of how long that banana peel could have been there."

The testimony of Mr. James Kirkland, the general manager of the department store, is set out in some detail in the majority opinion. It is a fair, accurate and sufficient summary of his testimony, and it is adopted by reference in this dissenting opinion.

I take issue with several statements and conclusions reached by the majority. There is not a shred of evidence to support some of them.

There is no evidence that it was the *practice* of the Penney customers to consume food and drink in the department store. What is shown by the record is that *on occasion* people would "bring food and drink" into the store "from off the premis-es," and that children *sometimes* entered the store "with fruit, and eating fruit." The management was *aware* of the problem, but there is no evidence that it *condoned* any such *practice*.

It is uncontroverted that the length of the time required for a fresh, unpacked banana to turn from yellow to a dark color is 36 hours. It was established that the standing orders to the employees in the produce department of the grocery store were to remove discolored bananas from the bins and return them to the wholesalers, and the evidence also conclusively shows that bananas were not kept on display for more than 24 hours. It is undisputed that on November 5, 1976, the date of the accident, the bananas on display in the grocery store were received that very same day. It is also undisputed that there was a grocery store "across the street" from the J. C. Penney store which sold bananas.

There is no evidence whatsoever which supports the statement in the majority opinion, to-wit: "[t]he jury could have reasonably concluded that it was such a fresh banana when it was dropped, and that it turned dark and discolored only after lying on the floor for a long period of time." The undisputed fact that "only fresh, yellow bananas were available" in the grocery store on the day of the accident does not imply that the banana peel in question came from a banana that was purchased from the grocery store prior to November 5, 1976; nor does it imply that "it (the banana peel) turned dark and discolored only after lying on the floor for a long period of time," as said by the majority.

Mrs. White did state that "the banana peel looked like it was several hours old," and that "she would never buy a banana having a peeling on it that looked like that one," as said by the majority. Such testimony has no probative value as to how long the banana peel remained undiscovered on the floor. Whether the peel looked old or whether the witness would have bought a banana encased in a similar peeling has absolutely nothing to do with the length of time the peeling remained on the floor.

The cleaning procedures and the standing orders to all of appellant's employees relating to a constant lookout for and prompt removal of dangerous objects and substances on the floor were strict, detailed and adequate. There was nothing more that appellant could have done in its efforts to guard against a customer slipping and falling as a result of contact with a foreign object on the floor in the department store.

The explanation of the enigma as to where the banana came from is simple. Despite the stringent methods employed to safeguard customers from injury, the fact is that someone dropped the banana peel in the aisle and plaintiff slipped on it, fell, and suffered severe injuries. The only person who could have dropped the banana peel was the child who, just before the accident and while being carried by a man in aisle number 4, was eating a *peeled down banana* and had the *peel in his hand*. This was observed by the witness Davila (appellant's employee), whose testimony, which has been summarized herein, was not contradicted by anyone. This happened *two or three minutes* before the accident. She was aware of the potential danger and made a special effort to determine if the child had dropped something on the floor. She discovered nothing. She, while in the performance of her duties, was asked then to make change for one of the cashiers, and, in doing so, was required to divert her attention from the child (and the aisle) to making change from the cash box. When she had finished her task, the man with the child had moved out of the area and plaintiff had fallen. There is no evidence that any other person saw the child while he was in the department store.

Plaintiff himself testified, in effect, that he could not see the floor where the peel was found because of the people ahead of him in the line. Therefore, it is logical to assume that during the time plaintiff was in the checkout line, no one else, Rodriguez, Kirkland or Davila, could have actually seen the banana peel on the floor because of the several people who, at that time, were ahead of plaintiff, and between him and the spot on the floor where the banana peel was subsequently discovered.

I totally disagree with the following statement contained in the majority opinion:

"[I]t is also logical to believe, as apparently the jury did, that the banana peel was on the floor by the counter a long period of time without actually being discovered and removed by store personnel, and that had they been exercising reasonable care it would have been removed."

There is no evidence to support such a statement. Reduced to effect, the statement means: 1) the cleaning crew, during their cleanup operations did not discover the banana peel, and did not exercise reasonable care when the area was first dust-mopped, then damp-mopped and then waxed; 2) Mr. Kirkland, who "eyeballed" the aisle floor just before the accident happened, and while people were in the aisle, did not exercise reasonable care when he failed to discover the banana peel; and, 3) Mrs. Davila, who viewed the floor two or three minutes before the occurrence in question to see if the child had dropped a banana peel on the floor, and who, immediately thereafter, attended to her regularly assigned duties which caused her visual attention to be focused in an area away from aisle number 4, also failed to exercise reasonable care in failing to discover the banana peel before plaintiff stepped on it. There is no evidence to sustain the finding that the banana peel was on the floor a long period of time before it was discovered; nor is there any evidence to support the jury finding that appellant's employees failed to exercise reasonable or ordinary care in not discovering and removing the banana peel before the accident occurred. The physical appearance of the banana peel constitutes no evidence of the length of time it *had been on the floor*.

The passage of time alone cannot be made the test of constructive notice to a storekeeper of the dangerous condition of a floor in his department store. What will constitute a reasonable time interval within which to discover and remove a dangerous

object from the floor will vary with the many factors and circumstances present, such as the nature of the business, the size of the store, the number of customers in the store at and immediately preceding the accident, the nature of the dangerous object or substance on the floor, its location, how the same came to be on the floor, the location of the object or substance with reference to aisles, counters and areas generally used by business invitees, the opportunity of the storekeeper to discover and remove it prior to the accident, and other circumstances. See *S. H. Kress & Co. v. Selph*, 250 S.W.2d 883, 889 (Tex.Civ.App.—Beaumont 1952, writ ref'd, n. r. e.).

The passage of the two or three minute interval during which the banana peel remained undiscovered does not, as a matter of law, constitute a failure to exercise ordinary care in this case. The majority, under the facts and permissible inferences, imposes upon appellant a duty beyond the exercise of ordinary care to keep its premises in a reasonably safe condition, and makes the appellant an *insurer* of the safety of its invited customers, which is contrary to all presently existing case law. I would grant appellant's motion for rehearing, would sustain its "no evidence" points, would reverse the judgment of the trial court and would render judgment that plaintiff take nothing by his suit.