**WAL–MART STORES, INC.
and Hector Dominguez,
Appellants,**

v.

**Petra ROSA, Appellee.**

**No. 04–99–00791–CV.**

Court of Appeals of Texas,
San Antonio.

May 31, 2001.

Kevin D. Jewell, Magenheim Bateman & Helfand, P.L.L.C., Houston, for Appellant.

David E. Dilley, Dilley Law Firm, San Antonio, Jose Luis Garza, Rio Grande City, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, ALMA L. LÓPEZ, CATHERINE STONE, PAUL W. GREEN, SARAH B. DUNCAN and KAREN ANGELINI, Justices.

### OPINION ON APPELLEE'S AMENDED MOTION FOR REHEARING EN BANC

Opinion by: SARAH B. DUNCAN, Justice.

Wal–Mart Stores, Inc. appeals the trial court's judgment against it in Petra Rosa's premise defect suit. The court has reconsidered the case en banc and withdraws the panel opinion and judgment dated October 31, 2000. We hold there is no evidence from which it can be inferred that Wal–Mart had actual knowledge or constructive notice of the premise defect for so long that it should have been discovered and removed. We therefore reverse the trial court's judgment and render judgment in Wal–Mart's favor.

### FACTUAL AND PROCEDURAL BACKGROUND

After paying for her groceries, Petra Rosa slipped and fell on a piece of banana. She later sued Wal–Mart for negligence. After a jury trial, the trial court rendered judgment in Rosa's favor. Wal–Mart appeals. .

### STANDARD OF REVIEW

■ The scope and standard for legal sufficiency review is well-established. To determine whether there is legally sufficient evidence, we review "only the evidence and the inferences tending to support the [jury's] finding and disregard all evidence and inferences to the contrary." *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge must fail. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987).

### DISCUSSION

■ To recover in a slip-and-fall case, a plaintiff must establish:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992). "[W]hen circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal–Mart Stores,*

*Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).

There is no evidence any Wal–Mart employee had actual knowledge of the piece of banana upon which Rosa fell. To meet the circumstantial evidence standard, Rosa points to the testimony of her daughter-in-law, Melissa Rosa. She testified the piece of banana was "brown," and when her children dropped pieces of banana, it took at least forty-five minutes to one hour for the banana to turn brown. However, this testimony is no evidence that the banana had been on the floor long enough to charge Wal–Mart with constructive notice. *See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983) ("Corbin's testimony that the grapes lying around him were discolored and ruptured does not tend to prove that the grapes had been on the floor a sufficient time to impute knowledge of their location to Safeway."); *Furr's, Inc. v. McCaslin*, 335 S.W.2d 284, 286 (Tex.Civ.App.—El Paso 1960, no writ) ("Where it is equally as probable that the withering, blackening and deterioration ... occurred *before* it got on the floor, a finding that it took place *afterward* is an unwarranted inference and may not be sustained.").

Melissa Rosa also testified the piece of banana looked to her to have been there a while. Again, however, this is not evidence from which constructive notice may be inferred. *See Gonzalez*, 968 S.W.2d at 937–38 ("The testimony that the macaroni salad 'seemed like it had been there awhile' is mere speculative, subjective opinion of no evidentiary value. The witnesses had not seen the macaroni salad prior to the fall and had no personal knowledge of the length of time it had been on the floor.").

Rosa also points to the number and proximity of Wal–Mart employees near where she fell, as well as a 3-inch wide-angled mirror on the wall behind her, as evidence that Wal–Mart should have discovered the piece of banana. In support of this argument, Rosa cites *Stoner v. Wal–Mart Stores, Inc.*, 35 F.Supp.2d 958 (S.D.Tex.1999), *Wal–Mart Stores, Inc. v. Tinsley*, 998 S.W.2d 664, 669 (Tex.App.—Texarkana 1999, pet. denied), and *Furr's Super Market v. Garrett*, 615 S.W.2d 280, 281 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.). However, this evidence does not tend to prove the piece of banana had been on the floor long enough to charge Wal–Mart with constructive notice. *See Gonzalez*, 968 S.W.2d at 938 ("Gonzalez had to demonstrate that it was *more likely than not* that the macaroni salad had been there for a long time.").

## CONCLUSION

As in *Gonzalez*, "the circumstantial evidence ... supports only the *possibility* that the dangerous condition existed long enough to give Wal–Mart a reasonable opportunity to discover it." *Gonzalez*, 968 S.W.2d at 936. We therefore reverse the trial court's judgment and render judgment in Wal–Mart's favor.

Justice RICKHOFF concurring.

RICKHOFF, Justice, concurring.

Generally, concurrence writing is wasted effort. However, this is another case, determined not by the facts, law, or analysis, but by the predisposition of judges.[1] The result is a refined tort reform analysis that largely eliminates both the equity power of jury judgments and another cause of action–the slip and fall. If as *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934,

---

1. Like Justice Duncan I know we are bound by *Gonzalez* and *Gonzalez* controls the result here. I write separately to express my confusion now over the role of jurors and judges.

938 (Tex.1998), says, Rosa must demonstrate "that it was more likely than not" that discolored macaroni salad or a banana "had been there for a long time" most slip and fall cases will be exceedingly hard to prove. I concur, but I am very uncomfortable with the trend that makes us senior jurors.

I see a distinction between our case and the Supreme Court's guidance in *Gonzalez.* In both, the central issue was whether the store had constructive knowledge of the spill and, in each, meager evidence (age of a fallen banana estimated from discoloration/age of fallen macaroni from dirt and cart tire tracks) supported "equally plausible but appropriate inferences." The distinction is that on the day of the accident here, the Wal–Mart staff acquiesced in letting a baby transverse the store dangling a peeled banana. That is exactly what happened in *J.C. Penney Co. v. Chavez,* 618 S.W.2d 399 (Tex.Civ.App.—Corpus Christi 1981, writ n.r.e.).

In *J.C. Penney,* store personnel condoned the practice of allowing customers to consume food (a banana) and drinks in the store and were aware this occurred regularly. *Id.* at 401. The evidence showed it took approximately thirty-six hours for a fresh, unpacked banana to turn a dark color, *i.e.,* from yellow to brown. Several witnesses saw the peel after Chavez fell. It was discolored, "gooey," and "black with yellow strips." A witness who was standing in line behind Chavez said the banana peel looked like it was several hours old. *Id.*

Like our case, the "record showed that the counter at which Chavez fell was built so that it had an indentation under it where a customer could place his feet when standing at the cash register." *Id.* Unlike our case, the evidence showed the store sold only fresh bananas, but the court concluded the jury, like ours, could

"have reasonably concluded that it was such a fresh banana when it was dropped, and that it turned dark and discolored only after lying on the floor for a long time." *Id.* A more exhaustive and eerily identical listing of the facts appears in Justice Bissett's dissent in *J.C. Penney.*

The inescapable conclusion is that, if you allow children to eat bananas in your store, customers will slip, fall, and injure themselves. Chavez, Gonzalez, and Rosa were all invincibly innocent victims of the store policy. To me, the facts, law, and analysis from 1981 (*Chavez*) to 1998 (*Gonzalez*) are the same—only the judges performing the analysis differ. While the holdings of Justice Nye and Chief Justice Hardberger appeal to my sense of fairness, I recognize much has changed since I took the bench, and I must, for now, follow the new. Justice Nye and Chief Justice Hardberger allowed the jury to subjectively determine from the circumstantial evidence that discolored bananas were more likely long on the ground, while the *Gonzalez* court subjectively finds discoloration inconclusive. Finally, although Chief Justice Hardberger believes *Lozano* affects the analysis in *Gonzalez,* I find *Lozano* unhelpful but remain hopeful that the new members of the court will bring us the clear guidance we all seek.

Here, the jury was asked whether "the negligence of any person or entity ... proximately cause[d] the occurrence or injury in question?" The jury was instructed that Wal–Mart was negligent if, among things, it "knew or reasonably should have known of the danger[.]" The jury found Wal–Mart negligent. I would leave it to the jury if I were free to do so.

Chief Justice HARDBERGER joined by Justice LÓPEZ and Justice STONE, dissenting.

HARDBERGER, Chief Justice, dissenting.

The question posed in *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 935 (Tex. 1998), was "what quantum of circumstantial evidence is legally sufficient to support a finding that an unreasonably dangerous condition has existed long enough to charge a proprietor with constructive notice of the condition." As the majority correctly notes, the Texas Supreme Court held that "when circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Id.* at 936. However, before relying too heavily on *Gonzalez,* we must consider the effect that the Texas Supreme Court's recent holding in *Lozano v. Lozano,* 52 S.W.3d 141 (Tex.2001), has on the Court's analysis.

In *Gonzalez,* the Court considered the legal sufficiency of the evidence relied upon to prove that the macaroni salad that caused Gonzalez to slip had been on the floor long enough to charge Wal–Mart with constructive notice. 968 S.W.2d at 936. The Court considered the following evidence offered by Gonzalez: (1) testimony that the macaroni had mayonnaise in it, was "fresh," "wet," "still humid," and contaminated with "a lot of dirt;" (2) testimony that the macaroni had footprints and cart track marks in it; and (3) testimony that the macaroni "seemed like it had been there awhile." *Id.* The Court rejected the testimony regarding the dirt, asserting that the testimony would not support any reasonable inference as to the length of time the macaroni had been on the floor. *See id.* at 937. Similarly, the Court rejected the testimony that the macaroni "seemed like it had been there awhile" as mere speculative, subjective opinion. *See*

*id.* This analysis does not appear to have been affected by *Lozano.* However, *Lozano* does affect the Court's analysis of the testimony that the macaroni had footprints and cart track marks in it.

In initially stating the standard governing its review in *Gonzalez,* the Court asserted: "meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding." 968 S.W.2d at 936. Because it concluded that equally plausible inferences could be drawn from the testimony that the macaroni had footprints and cart track marks in it, the Court concluded that the testimony was no evidence. In *Lozano,* a majority of the Court joined Chief Justice Phillips' opinion which stated: "circumstantial evidence is not legally insufficient merely because more than one reasonable inference may be drawn from it. If circumstantial evidence will support more than one reasonable inference, it is for the jury to decide which is more reasonable, subject only to review by the trial court and the court of appeals to assure that such evidence is factually sufficient." 52 S.W.3d at 148 (Phillips, C.J., concurring and dissenting). After *Lozano,* the Court could no longer reject the inference that the macaroni salad had been on the floor for a prolonged period of time based on the presence of footprints and cart marks in the macaroni salad. Instead, the jury would be permitted to decide whether it was more reasonable to infer whether the tracks were of recent origin or had been there a long time.

In this case, we must determine whether a jury could find from the circumstantial evidence that it is more likely than not that the banana causing Rosa to slip was on the floor long enough to give Wal–Mart a reasonable opportunity to discover the banana. Therefore, our focus must be on

whether Wal–Mart had a reasonable opportunity to discover the banana. Because a jury could reasonably infer from the evidence that Wal–Mart had such an opportunity, I would affirm the trial court's judgment. Because the majority holds to the contrary, I respectfully dissent.

Two Wal–Mart employees testified that the customer in line ahead of Rosa was holding a baby that was eating a banana. The employees stated that their attention became focused on this fact when the cashier who was checking out that customer asked one of the Wal–Mart employees, who was a manager, for guidance as to how the customer should be charged for the banana. The employee was uncertain as to how the banana should be charged because customers are normally charged for a banana based on its weight, but the baby had consumed part of the banana. The manager told the employee not to charge the customer. The other employee admitted that it should be a concern of Wal–Mart to ensure that the baby did not create a mess when eating the banana.

At the time the banana was dropped, three Wal–Mart employees were aware that the baby was eating a banana. At least one of those employees was aware of the potential for the baby to create a mess by dropping the banana. None of those employees took the time to check and determine whether the baby had in fact dropped the banana.

Under these circumstances, the length of time that Wal–Mart needed to have a reasonable opportunity to discover the condition was significantly reduced. Three Wal–Mart employees were in the immediate vicinity and were aware of the potential for a dangerous condition to develop. They knew of the exact dangerous condition that developed. In fact, they knew what every parent knows from common experience: that there is a good chance when a baby is eating a banana that as much of the banana will wind up on the floor as in the baby's stomach. *See Lozano,* 52 S.W.3d at 168 (Baker, J., concurring and dissenting) (noting common sense can provide a logical bridge between the circumstances and a jury's finding). That was the concern. But no one did anything about it. None of those employees checked to ensure that the condition did not develop within the few minutes it took to complete the customer's transaction. *See Wal–Mart Stores, Inc. v. Garcia,* 30 S.W.3d 19, 23 (Tex.App.—San Antonio 2000, no pet.) (taking into consideration close proximity of personnel to site of hazardous condition). The cashier even chose not to check the floor when moving the customer's cart to the end of the check-out stand despite the fact that each Wal–Mart employee carries a paper towel in their pocket to wipe spills.

Wal–Mart asserts that the evidence as to the source of the dangerous condition is not refuted. The condition was caused by the baby eating the banana. The same baby who was the focus of at least three Wal–Mart employees' attention, and the same baby that one Wal–Mart employee thought might create the very condition that caused Rosa to slip. Given those circumstances, a jury could reasonably infer that it was more likely than not that Wal–Mart had a reasonable opportunity to discover that the baby had dropped the banana and created the dangerous condition. That was the jury's finding, and there was sufficient evidence to support that finding.