**Opinion issued August 28, 2014.**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-13-00046-CV

_____

**ANNIE EAST, Appellant**

**V.**

**SOUTHWEST CIMM'S INC. D/B/A BURGER #1002 A/K/A CIMM'S INCORPORATED, Appellee**

---

On Appeal from the County Civil Court at Law No. 2
Harris County, Texas
Trial Court Case No. 997701

---

### DISSENTING OPINION

Today the Court holds that affidavit evidence that there was a "dirty liquid substance" on an "extremely dirty" and "slippery" floor of a restaurant that "looked like it had not been cleaned for several days" is adequate to defeat a premises owner's no-evidence summary judgment motion challenging the

constructive knowledge element of a slip-and-fall premises liability claim. Because I believe *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998), requires holding that East provided no temporal evidence from which a fact-finder could assign constructive knowledge, I respectfully dissent.

## Temporal Evidence is Required

East has the burden to prove that the store had actual or constructive knowledge of a dangerous condition on the premises to prevail on her premises liability claim. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). East could meet this burden through evidence that store employees (1) placed a substance on the floor; (2) actually knew that a substance was on the floor; or (3) had a reasonable opportunity to discover the substance on the floor because, more likely than not, it existed long enough for the employees to have discovered it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

East had no evidence of actual knowledge and, therefore, needs to adduce more than a scintilla of evidence from which constructive knowledge could be imposed. *See Bendigo v. City of Houston*, 178 S.W.3d 112, 113–15 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In the context of a spill on the floor of a public building, evidence of the spill's conspicuousness and the proximity of the property owner or its employees to the spill are relevant to whether the owner had constructive notice of the dangerous condition. *Reece*, 81 S.W.3d at 815–16. But

even when a spill is conspicuous and employees are in close proximity to it, "there must be some proof of how long the hazard was there . . . ." *Id.* This requires "temporal evidence" of the length of time the dangerous condition existed to establish that the premises owner had a reasonable opportunity to discover and remedy it. *Id.* at 816 (requiring "some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition."). Temporal evidence allows for the conclusion that the premises owner "should" have discovered the danger, not just that it "could" have done so. *Id.*

The question, then, is whether East adduced any evidence of how long the "dirty liquid substance that was on the unclean floor" had been there. In my view, she has not.

### The Affidavits

I do not agree with the Court's analysis of the factual assertions contained in the two affidavits attached to East's summary judgment response.

### A.    Identification of cause of fall

The Court appears to understand the affidavits not to allege that there was a spill but that the floor was equally dirty and slippery throughout the store. Under this reading, East did not fall from slipping on a spilled liquid substance; instead, she supposedly fell as a result of the consistently dirty floor conditions—as if there

3

was an equal probability that she would have fallen by the front door, the cash register, or where she actually fell—all of which was presumably visible to the employees. But the affidavit from East's grandson states that East "slipped on a dirty liquid substance that was on the unclean floor." So while the floors were dirty in other locations in the store—such as near the entrance—and may have caused her grandson to slip (but apparently not fall), the ultimate cause of *her* fall was the liquid substance. East herself never claims that she slipped on the dirty floor before her fall so the only evidence of the cause of her fall is her grandson's direct statement that it was a liquid on the dirty floor that caused her fall.

## B.    Merging of unrelated facts

The Court merges two unrelated factual assertions to meet the temporal evidence requirement that a dangerous condition exist long enough for the employees to have discovered it:  (1) East's grandson's statement that the liquid substance East fell on was "extremely dirty" and (2) the grandson's statement that the restaurant "looked like it had not been cleaned for several days" combined with East's daughter's statement that the restaurant was "extremely dirty" when she visited the restaurant later that day.  These factual assertions—alone and in combination—fail to demonstrate constructive knowledge of a liquid substance on the floor.

4

Regarding the grandson's description of the liquid as "extremely dirty," the Court concedes that "a general description of dirtiness," alone, does not meet the temporal requirements of *Reece*. The point was explained in a case with facts analogous to those adduced by East: *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934 (Tex. 1998). In *Gonzalez*, a shopper slipped on spilled macaroni salad that was described by the plaintiff's daughter as having "a lot of dirt" in it along with footprints and cart track marks. *Id.* at 936. The Court held that the plaintiff's evidence was insufficient to establish that, more likely than not, the salad had been on the floor long enough to charge Wal-Mart with constructive knowledge:

> Dirt in macaroni salad lying on a heavily-traveled aisle is no evidence of the length of time the macaroni had been on the floor. That evidence can no more support the inference that it accumulated dirt over a long period of time than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle.

*Id.* at 937. When the evidence makes it equally plausible that the dangerous condition just occurred as that it had been there a lengthier amount of time, that evidence is insufficient to charge the premises owner with constructive knowledge. *Id.* at 936. Without temporal evidence necessary to establish constructive knowledge, summary judgment is proper. *See Bendigo*, 178 S.W.3d at 114–15; *cf. Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (stating that "an inference stacked only on other inferences is not legally sufficient evidence.").

5

Here, as in *Gonzalez*, the dirty substance was in an area that would have been heavily traveled—"only seven or eight steps" away from the cash register. Thus, just as in *Gonzalez*, the liquid substance could have been quickly contaminated by customers walking through the area. Indeed, dirt in other areas of the store could have easily been tracked into the liquid. Because East herself walked up to the counter, made and paid for her order, and only slipped as she was walking away, she could have walked through the liquid on her way to the counter as well.

Other courts, likewise, have concluded that a description of water or some other substance as "dirty" is insufficient to satisfy the temporal requirement for constructive knowledge. *See, e.g.*, *Wal-Mart Stores, Inc. v. Rosa*, 52 S.W.3d 842, 844 (Tex. App.—San Antonio 2001, pet. denied) (en banc) (evidence that banana on floor was "brown" only supports the "possibility" that the dangerous condition existed long enough to establish constructive notice; possibility is no more than speculation and is treated as no evidence); *Safeway Stores, Inc. v. Harkless*, 601 S.W.2d 534, 537–39 (Tex. App.—Tyler 1980, writ ref'd n.r.e.) (evidence that brown liquid was on floral department floor held inadequate to establish constructive knowledge); *Robledo v. Kroger Co.*, 597 S.W.2d 560, 560–61 (Tex. App.—Eastland 1980, writ ref'd n.r.e.) (concluding that existence of "dirty water" on floor is not probative of how long spill had been on floor before customer fell).

6

The evidence regarding the "extremely dirty" substance on the floor, without more, did not create a fact issue.

I also do not accept the Court's statement that there is "direct evidence" that the store's employees "were in close proximity to the visible extremely dirty liquid on the floor." While seven or eight steps away from the cash register may be close in proximity, there is no evidence that the liquid was visible from behind the cash register to have made it conspicuous to the employees. The cash register counter could have blocked visibility, the spill could have been seven or eight steps to the right or left of the cash register which would have made it much less conspicuous, or the spill could have been obstructed from the employees' view by the customers waiting in front of the cash register counter to place their orders. East offered no evidence that the spill was conspicuous from the cashiers' vantage points. Moreover, East offered no evidence of the source of the liquid, the size of the liquid, or its specific location. She does not even identify the liquid itself: was it a refreshment that was spilled at the drink station, a squished ketchup packet, or possibly melted ice? Unlike the scenario discussed in *Reece*, East did not offer evidence of the color of the spill or floor to show that the contrast between the two made the spill more visible to establish conspicuousness. *See Reece*, 81 S.W.3d at 816 (noting that dangerous substance may be more conspicuous if it is "a large puddle of dark liquid on a light floor").

7

The Court contends that there is something more here: evidence that the store and floor themselves were also dirty. But evidence of other dirty areas of the store is insufficient to create a fact issue on constructive knowledge of the dangerous condition that caused East's fall. To the extent that the store and floor were dirty in areas other than where East fell, those areas were not the dangerous condition that caused her fall.

The Court states, however, that "[t]he slippery condition existed on the floor from the entryway . . . to the cash registers." None of the affidavits make this claim; the Court considers this conclusion a fair inference from the grandson's statement that "when we entered the Burger King the floor was slippery." But his affidavit distinguishes this area from the area that he claims should have had barriers because it had a "dirty liquid substance" on it. It was this substance that he alleges "was the cause of her fall."

The Court reaches back to a pre-*Gonzalez* decision, *H. E. Butt Grocery Co. v. Heaton*, 547 S.W.2d 75 (Tex. Civ. App.—Waco 1977, no writ), which it describes as concluding that a dirty floor with a spill on it that appeared to be covered with the "same layer of dirt that was on the floor" justified an inference that the spill had been on the floor as long as the surrounding dirt. In *Heaton*, the plaintiff testified that it "appeared" that "the same layer of dirt that was on the floor proceeded *to cover the grapes* as if they had been there for a great length of time."

8

*Id.* at 76 (emphasis added). The appellate court concluded that this testimony was some evidence that the spill (i.e., smashed grapes) had been on the floor "longer than mere moments or a few minutes" because the spill was covered with the dirt that had accumulated over the period that employees allowed to pass between cleanings. *Id.* Such evidence may have been relevant here, too, but was not offered. Therefore, to the extent *Heaton* remains instructive, is it distinguishable on its facts.

## Conclusion

East was required to present more than a scintilla of evidence to satisfy the temporal requirement that the liquid substance was on the floor "long enough to give [the store] reasonable opportunity to discover" and clean it. She did not, and therefore, did not create a fact issue on constructive knowledge. I would affirm the trial court's judgment.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Justice Brown, dissenting from the judgment.